UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

NINA BOLOGNA,

                                Plaintiff,


v.                                                      1:26-cv-00402
                                                     (ECC/CBF)


COUNTY OF RENSSELAER, et al.,

                                  Defendants.

_____

APPEARANCES:

NINA BOLOGNA
*Plaintiff, pro se*
2410 3rd Avenue
Watervliet, NY 12189


**CARLA B. FREEDMAN**, United States Magistrate Judge

<u>**REPORT-RECOMMENDATION AND ORDER**</u>

**I.      INTRODUCTION**

The Clerk has sent to the Court for review a complaint, Dkt. No. 1, along with an

amended complaint, Dkt. No. 6, submitted by *pro se* plaintiff Nina Bologna ("Plaintiff").

Plaintiff has not paid the filing fee for this action and seeks leave to proceed *in forma pauperis*

("IFP").  Dkt. No. 2.

**II.     IFP APPLICATION**

Upon review, Plaintiff's IFP application demonstrates economic need.  *See* Dkt. No. 2.

Therefore, she is granted permission to proceed IFP.[1]

---

[1] Although her IFP application has been granted, Plaintiff will still be required to pay fees that
she may incur in this action, including copying and/or witness of fees.

### III.   BACKGROUND

Plaintiff filed her original complaint on March 16, 2026.  Dkt. Nos. 1, 2.[2]  On April 9, 2026, she filed an amended complaint.  Dkt. No. 6.  The following is drawn from the amended complaint, the operative pleading.[3]

Plaintiff purports to bring this action "individually, and as parent and natural guardian of J.B. D.B. H.B. who are minors."  *Id*. at 1.  Plaintiff's amended complaint lists three defendants: County of Rensselaer (the "County"); Rensselaer County Child Protective Services ("CPS"); and September Bembry ("Bembry"), "a CPS caseworker employed by the County."  *Id*.

Plaintiff alleges that on or about September 8, 2025, Defendant Bembry appeared at her residence in Watervliet, New York and "demanded entry without a warrant or court order."  *Id*. at 2.  "No emergency circumstances existed."  *Id*.  "Plaintiff refused entry and requested legal documentation, which was not provided."  *Id*.  "Defendants used threats and coercion, including threat to remove Plaintiff's children."  *Id*.

Between September and October 2025, "Defendants made repeated unannounced visits" and "continued to demand entry without legal authority[.]"  *Id*.  "Defendants threatened with removal of the children[.]"  *Id*.  "No court order was ever issued."  *Id*.  "On numerous occasions, Plaintiff contacted Rensselaer County CPS, including Defendant September Bembry, to: clarify

---

[2] Citations to Plaintiff's submissions will refer to the pagination generated by CM/ECF, the Court's electronic filing system.  Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

[3] *Swinea v. Peters*, No. 1:24-CV-01517 (MAD/PJE), 2025 WL 1470840, at *2 (N.D.N.Y. May 22, 2025) (explaining an amended complaint supersedes and replaces the original complaint in its entirety rendering  it "of no legal effect") (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977), *cert. denied sub nom.*, *Vesco & Co., Inc. v. Int'l Controls Corp.*, 434 U.S. 1014 (1978)), *report and recommendation adopted*, 2025 WL 1819710 (N.D.N.Y. July 2, 2025).

allegations protect her children ensure proper handling of the investigation[.]" *Id*. "Despite

Plaintiff's cooperation and outreach, Defendants continued engaging in coercive and improper

conduct ongoing harassment and conduct[.]" *Id*. On or about October 3, 2025, "Defendant

claimed a 'safety plan' existed" but a "supervisor confirmed there were no safety concerns and

no active plan[.]" *Id*.

Plaintiff claims "Defendants investigated multiple (at least four) allegations of sexual

abuse against Plaintiff." *Id*. at 3. "Each of these allegations was ultimately determined to be

unsubstantiated." *Id*. "Despite the severity of the allegations, Defendants failed to take

appropriate investigative steps while continuing to subject Plaintiff to intrusive and harmful

actions." *Id*.

Plaintiff alleges "Defendant: Encouraged violation of Family Court order Ignored

concerns regarding a child's medication Made false statements about Plaintiff's mental health

Caused repeated CPS visits without justification Parked outside Plaintiff's home to intimidate[.]"

*Id*. Defendants contacted Plaintiff's children's school and her long-term treating psychiatrist

"after Plaintiff revoked all authorization." *Id*. "As a result, Plaintiff's psychiatrist terminated

care due to feeling bullied by September." *Id*.

Plaintiff states that "During a prior CPS investigation: Allegations were unsubstantiated

Police raided Plaintiff's home Plaintiff were separated from her children CPS refused medical

examination despite serious allegations[.]" *Id*. at 4. Plaintiff claims "This demonstrates a pattern

of improper and harmful conduct." *Id*.

The amended complaint lists three causes of action: (1) Negligence/Misconduct; (2)

Emotional Distress; and (3) Abuse of Authority. *Id*. at 4-5. Specifically, Plaintiff alleges

"Defendants acted negligently and outside lawful authority" *Id*. at 4. She claims, "Defendants

engaged in extreme and outrageous conduct causing severe emotional distress to Plaintiff and her children." *Id*. at 5. She also claims, "Defendants misused CPS authority to harass, intimidate, and coerce Plaintiff." *Id*.

"As a result of Defendants' repeated conduct and CPS involvement," Plaintiff's children "have been negatively impacted." *Id*. at 4. "They are struggling due to the instability and fear caused by ongoing CPS inference[.]" *Id*. "Plaintiffs suffered: Emotional distress Anxiety and fear Loss of medical care Interference with family life Fear of removal Fear of attending school Emotional trauma Behavioral issues Psychological distress. *Id*. at 5. As relief, Plaintiff requests monetary damages, costs, disbursements, and "other relief." *Id*.

## IV.     LEGAL STANDARD

Section 1915 of Title 28 requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint, or portion thereof, when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they *suggest*." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (internal quotation marks and citation omitted, emphasis in original). A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989), *abrogated on other grounds by Bell Atl. Corp. v.*

4

*Twombly*, 550 U.S. 544 (2007); *see also Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . . or (2) the claim is based on an indisputably meritless legal theory.").

Additionally, when reviewing a complaint, a court may look to the Federal Rules of Civil Procedure. *See Cole v. Smrtic*, No. 1:24-CV-00847 (MAD/CFH), 2024 WL 4870495, at *2 (N.D.N.Y. Nov. 21, 2024) (explaining, "special solicitude for *pro se* pleadings has its limits, because *pro se* pleadings still must comply with . . . the Federal Rules of Civil Procedure . . . .") (internal quotations and citation omitted), *report and recommendation adopted*, 2025 WL 247901 (N.D.N.Y. Jan. 21, 2025). "Although 'no technical form is required,' the Federal Rules make clear that each allegation contained in the pleading 'must be simple, concise, and direct.'" *Id*. (quoting Fed. R. Civ. P. 8(d)). "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). This rule serves "to provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotations and citations omitted).

To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable

inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Generally, a court should not dismiss a *pro se* complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (citation and internal quotation marks omitted). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V.    ANALYSIS

### A.    Subject Matter Jurisdiction

Federal courts exercise limited jurisdiction pursuant to Article III of the Constitution. A court may exert subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States" and civil actions where there is diversity of citizenship between the parties and the amount in controversy exceeds the sum of $75,000. 28 U.S.C. §§ 1331, 1332. A plaintiff must allege facts establishing that subject matter jurisdiction exists. *Lunney v. United States*, 319 F.3d 550, 554 (2d Cir. 2003). In the absence of a basis for exercising jurisdiction, the case must be dismissed. Fed. R. Civ. P. 12(h)(3); *United States v. Cotton*, 535 U.S. 625, 630 (2002). "[F]ailure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700 (2d Cir. 2000).

6

Plaintiff's amended complaint fails to address the grounds for the Court's subject matter jurisdiction. Diversity jurisdiction is unavailable to Plaintiff because all parties are citizens of New York and the amount in controversy does not exceed the statutory requirement. *See* 28 U.S.C. § 1332(a)(1); *see Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir. 1992) ("28 U.S.C. § 1332 requires complete diversity between all plaintiffs and all defendants . . . ."). With respect to federal question jurisdiction, even when liberally construed, the amended complaint fails to state what, if any, federal statute or provision of the Constitution this action arises under. *See generally Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (the plaintiff bears the burden of establishing subject matter jurisdiction). Plaintiff's alleged causes of action are based on state law. Dkt. No. 6 at 4-5.

In sum, because Plaintiff has failed to establish this Court's subject matter jurisdiction through either federal question or diversity, the undersigned recommends dismissal of the amended complaint in its entirety.[4] And because the Court lacks subject matter jurisdiction, the undersigned recommends dismissing the action without prejudice. *See Hollander v. Garrett*, 710 F. App'x 35, 36 (2d Cir. 2018) (summary order); *see also Humphrey v. Syracuse Police Dep't*, 758 F. App'x 205, 206-07 (2d Cir. 2019) (summary order) (explaining, where a court dismisses a complaint for lack of subject matter jurisdiction, the court does "not have the power to reach the merits and dismiss the claims against the defendants for failure to state a claim, or to eventually

---

[4] "Although, generally, this Court has the discretion to exercise its supplemental jurisdiction to review state law claims in some cases, *Block v. First Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993), where there is no meritorious federal claim before the Court, the district court should decline to exercise its supplemental jurisdiction to review any related state law claims." *Lawler v. ViaPort New York, LLC*, No. 1:19-CV-548 (GLS/CFH), 2019 WL 2717900, at *3 (N.D.N.Y. June 28, 2019) (recommending, upon § 1915 review, that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claim where the plaintiff failed to "set forth a valid federal law claim"), *report and recommendation adopted*, 2019 WL 6134180 (N.D.N.Y. Nov. 19, 2019).

dismiss the complaint with prejudice for failure to file a proposed amended complaint.") (citing *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54-55 (2d Cir. 2016)); *accord McKie v. Kornegay*, No. 21-1943, 2022 WL 4241355, at *2 (2d Cir. Sept. 15, 2022) (summary order).

**B.      Other Deficiencies**

Plaintiff, proceeding *pro se*, purports to bring this action on behalf of her minor children. Dkt. No. 6 at 1.  "While a litigant in federal court has the right to act as her own counsel, '[a] person who has not been admitted to the practice of law may not represent anybody other than [her]self.'"  *Gammons v. Cody*, No. 1:25-CV-941 (AJB/DJS), 2025 WL 2722411, at *3 (N.D.N.Y. Sept. 2, 2025) (alterations in original) (quoting *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citation omitted)), *report and recommendation adopted*, 2025 WL 2719776 (N.D.N.Y. Sept. 24, 2025); *accord Johnson v. City of New York*, No. 22-2096, 2023 WL 3607219, at *2 (2d Cir. May 24, 2023).  "This rule extends to parents: 'a parent not admitted to the bar cannot bring an action *pro se* in federal court on behalf of his or her child.'"  *Gammons*, 2025 WL 2722411, at *3 (quoting *Tindall v. Pultney High School Dist.*, 414 F.3d 281, 284-85 (2d Cir. 2005)); *see Berrios v. N.Y. City Hous. Auth.*, 564 F.3d 130, 133 (2d Cir. 2009) ("[A] layperson may not represent . . . a minor child.") (citing *Cheung v. Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)); *see also Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998) ("[B]ecause *pro se* means to appear for one's self, . . . a lay person may not represent a corporation or a partnership or appear on behalf of his or her own child.").  Thus, Plaintiff may not bring claims on behalf of her minor children.

Plaintiff names Rensselaer County Child Protective Services as a defendant.  Dkt. No. 6 at 1.  "[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or

be sued." *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002); *Mulvihill v. New York*, 956 F. Supp. 2d 425, 427 (W.D.N.Y. 2013) (explaining, agencies of a municipality, (i.e., departments of social services or child protective services), are not suable entities under New York law); *see, e.g.*, *Rogers v. CPS*, No. 5:20-CV-75 (LEK/ATB), 2020 WL 2059824, at *3 (N.D.N.Y. Apr. 29, 2020) ("Plaintiff cannot sue [Child Protective Services] because it is an administrative arm of [the] County."). Thus, Rensselaer County Child Protective Services is not a proper defendant.

## C.    Leave to Amend

In deference to Plaintiff's *pro se* status, the undersigned recommends granting Plaintiff leave to amend. *See Gomez*, 171 F.3d at 795. The Court advises Plaintiff any amended pleading she submits to this Court must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. The pleading must be labeled "Second Amended Complaint" and must bear the same docket number as this action, 1:26-cv-00402 (ECC/CBF). Any such amended pleading should specifically identify the legal theory or theories that form the basis for her claim. Plaintiff is cautioned that no portion of her prior complaints shall be incorporated into any amended pleading by reference. The amended pleading must set forth all of the claims she intends to assert against the Defendant(s) and must demonstrate that a case or controversy exists between the Plaintiff and the Defendant(s) which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. *See* discussion *supra* Section V.B. Of course, Plaintiff may also pursue her claims in state court if appropriate.

## VI.    CONCLUSION

**WHEREFORE**, it is hereby

9

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is

**GRANTED**, and it is

**RECOMMENDED** that Plaintiff's first amended complaint (Dkt. No. 6) be

**DISMISSED without prejudice and with leave to amend**; and it is further

**ORDERED** that the Clerk provide to Plaintiff a copy of this Report-Recommendation

and Order, along with copies of the unpublished decisions cited herein in accordance with the

Second Circuit decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to

file written objections to the foregoing report.[5]  Such objections shall be filed with the Clerk of

the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS**

**WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993)

(citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72.

**IT IS SO ORDERED.**

Dated: April 30, 2026
        Syracuse, New York

Carla B. Freedman
U.S. Magistrate Judge

---

[5] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)

2024 WL 4870495

2024 WL 4870495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,
v.
Honorable Michael W. SMRTIC, et al. Defendants.

No. 1:24-CV-00847 (MAD/CFH)
|
Signed November 21, 2024

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

**REPORT-RECOMMENDATION & ORDER**

CHRISTIAN F. HUMMEL, United States Magistrate Judge

### I. In Forma Pauperis

**\*1** Plaintiff pro se Matthew H. Cole ("plaintiff") commenced this action (No. 1:24-CV-00623) on May 6, 2024, by filing a complaint. See Dkt. No. 1 ("Compl."). On September 26, 2024, plaintiff submitted what the Court construes to be a supplement to the complaint. [1] See Dkt. No. 7. In lieu of paying this Court's filing fees, he submitted an application for leave to proceed in forma pauperis ("IFP"). See Dkt. No. 2. The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP. [2] Thus, the Court proceeds to its review of the complaint pursuant to 28 U.S.C. § 1915. Plaintiff has also submitted for the Court's review a Pro Se Application for Permission to File Electronically and a Motion to Appoint Counsel. See Dkt. Nos. 4, 5.

[1] The submission includes a letter addressed to District Judge D'Agostino, titled, "Requirements for Cases Removed From State Court," Dkt. No. 7; a receipt from Montgomery County Clerk dated December 8, 2022; and a "Notice of Claim" with the caption of Cole v. County of Montgomery, dated December 7, 2022. See Dkt. No. 7. The undersigned has reviewed this submission in connection with the initial review of plaintiff's

complaint. See Sira v. Morton, 380 F. 3d 57, 67 (2d Cir. 2004).

[2] Plaintiff is advised that, although he has been granted IFP status, he is still required to pay all fees and costs he may incur in this action, including, but not limited to, copying fees, transcript fees, and witness fees.

### II. Initial Review

#### A. Legal Standards

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). As the Second Circuit stated,

> There are many cases in which we have said that a pro se litigant is entitled to "special solicitude," that a pro se litigant's submissions must be construed "liberally," and that such submissions must be read to raise the strongest arguments that they "suggest[.]" At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]"

**\*2** Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (citations and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191-92 (2d Cir. 2008).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)). Pleading guidelines are provided in the Federal Rules of Civil Procedure. Specifically, Rule 8 requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought...

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009) (summary order).

Further, Fed. R. Civ. P. 10 provides:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of a defendant's duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted).

**\*3** This Court also has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First East Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). "Legal frivolity ... occurs where 'the claim is based on an indisputably meritless legal theory [such as] when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint.' " Aguilar v. United States, Nos. 99-MC-0304, 99-MC-0408, 1999 WL 1067841, at *2 (D. Conn. Nov. 8, 1999) [3] (quoting Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998)); see also Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("[D]ismissal is proper only if the legal theory ... or factual contentions lack an arguable basis.").

[3]   Any unpublished cases cited within this Report-Recommendation & Order have been provided to plaintiff.

### B. Complaint

Plaintiff's civil cover sheet indicates that he seeks to bring this action pursuant to "Title U.S.C. 18 Section 241, Conspiracy Against Rights & Title U.S.C. 18 Section 242 Deprivation of rights Under Color of Law." Dkt. No. 1-1 at 1. The civil cover sheet further provides that his cause of action involves, "Violation of Due process, Speedy Trial Rights, Ineffective Assistance of Counsel. I feel I am being targeted for being black and gay." Id.

Plaintiff's form complaint checks the box indicating that he seeks to bring this case pursuant to 42 U.S.C. § 1983.

See Compl. at 3. In response to the question in the form complaint asking in "what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials," plaintiff responds, "Due Process, 30.30 Speedy Trial Violation, Ineffective Assistance of counsel."[4] Id. In response to a question asking him to explain "how each defendant acted under color of state or local law," plaintiff states "Each judge deliberately denied me due process, and refused to look into the paperwork to see that i was improperly denied my speedy trial rights. It was a tean [sic] effort. The ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me. All mentioned actions were done and upheld even after I showed federal law with supportive case law as a pro se litigant." Id.

[4] Although plaintiff generally references ineffective assistance of counsel, Compl. at 4, he does not name any attorney who may have represented him. Any claims against the prosecutor would not be considered ineffective assistance of counsel because Mr. Maxwell, as the prosecutor, was not plaintiff's attorney.

Plaintiff provides that his "case is still on appeakl [sic] in Appellate Court Third Department. I feel they are guilty, or part of what I call a scandal. I went to them from the very start with a complaint to the grievance committee, where they denied any wrongdoing. It must be ok to violate Constitutional rights there. This is from March 2019 to present" Id.

In response to a question that asks plaintiff to state the facts underlying his claims, plaintiff states, "Please see attached Article 78 that is attached. It was dismissed being in the wrong court, but is on point." Id. at 4. Plaintiff did not provide the Court with any such attachment and has not submitted any Article 78 materials. See Compl., Dkt. No. 7.

In response to the form complaint's question asking about any injuries suffered as a result of the conduct he complains of, plaintiff states, "Sever [sic] depression over 20 years, irreperable [sic] harm, defamation of charcter [sic] by arguments not legally allowed to give. Loss of income, inability to gain and keep employment, mental trauma, instilled disbelief in justice in the legal system, familial traumam [sic] due to my legal battles." Id. Indicating the relief sought, plaintiff states

*4 Petitioner seeks reinstatement of driving priveldges [sic], and 10 million dollars for damages caused by conflict of interest, deliberate violation of Due Process, Speedy Trial rights, Ineffective assistance of counsel, malice, Brady Violation, Petitioner claims deliberate misconduct and malice in Montgomery County Court, the Saratoga Disrict Attorney's Office, and the Supreme Court Appellate Division Third department. ** This is subject to change if an attorney agrees to represent.

Compl. at 5. Although he typed his name, plaintiff does not sign the complaint where a signature is indicated. See id. at 8.

Plaintiff provides in his supplement that he "removed this action to district court asserting jurisdiction pursuant to 42 U.S.C. 1983, and § 1441." Dkt. No. 7. at 1. Plaintiff states that he removed this case from Montgomery County Supreme Court. See id. He states that he seeks or sought the removal because he was told he was "not guarantee counsel" at the state, but that "[i]n Federal Court, there is that option, pending qualification, and I am told, if a lawyer agrees to take it, then I really have something. I am in dire need of counsel." Id.

Plaintiff states, "[t]he ineffective assistance of counsel and The County Court are a matter already mentioned in the appeal." Dkt. No. 7 at 2. Plaintiff states that "[t]o get my conviction, I allege judicial and prosecutorial misconduct, and ineffective assistance of counsel × 4. That is why I am pro se. I had to protect myself when appointed counsel did not. It also went through a couple judges which is why they are mentioned in the preliminary complaint/paperwork, and why I mention bias." Id. Plaintiff states he can "prove each thing I saw not just with my words, but with transcripts[5] from the County Court, and the Adult Drug Court." Id. Plaintiff refers to being drug free for four and a half years and having academic success in college. Id. at 3. He states that he wishes this Court to hear his case because he believes he will not "see bias" in federal court "like I saw in others." Id. Plaintiff states that he "also put in a Notice of Removal in the Federal Court for those criminal charges that led to the Complaint. I do not trust the assigned appellate attorney. That case too has

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)

2024 WL 4870495

Constitutional violations. That case number is 1:24-CR-301 (AMN)." Id.

[5] Plaintiff did not provide any transcripts.

### C. Discussion [6]

[6] As a courtesy, the Court has provided plaintiff with copies of any unpublished cases cited within this Report-Recommendation & Order.

### 1. Rule 8

As a threshold issue, plaintiff's complaint fails to meet the requirements of Rule 8. See FED. R. CIV. P. 8(a)(2). He does not provide a short and plain statement of the claim demonstrating why he is entitled to relief. Although he makes general references to both an Article 78 proceeding and a criminal proceeding and unexplained references to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel," he does not provide factual support or context. Thus, his complaint does not provide "fair notice" to defendants of the claims against them. See FED. R. CIV. P. 8(a)(2).

### 2. Heck v. Humphrey

However, there are several substantive concerns that further lead the undersigned to recommend dismissal. First, in referencing to "Due Process, 30.30 Speedy Trial Violation, Ineffective of Counsel" and explicitly referencing a criminal conviction, it is clear that plaintiff is attempting to seek some kind of review of a criminal proceeding or conviction. See Compl. at 3. Plaintiff also accuses all named judges of denying him due process and contends that an unnamed "ADA/Special Prosecutor withheld potential exculpatory material which was usd [sic] against me." Compl. at 4. Plaintiff also references a conviction. See Dkt. No. 7 at 4. Such claims would be barred by Heck v. Humphrey.

**\*5** As this Court, citing the District of Connecticut, has set forth:

In Heck, the Supreme Court held that in order for a plaintiff "to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by

actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. The court further held that "[a] claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983." Id. at 487 (emphasis in original).

[ ]

Thus, under Heck and its progeny, if a conviction has not been invalidated previously, a "§ 1983 action is barred ... no matter the target of the prisoner's suit ... if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original).

Ali v. Shattuck, No. 8:24-CV-0128 (DNH/CFH), 2024 WL 2747619, at \*3 (N.D.N.Y. May 29, 2024), report-recommendation adopted sub nom. Ali v. Dow, No. 8:24-CV-128, 2024 WL 3460745 (N.D.N.Y. July 18, 2024) (quoting Zografidis v. Richards, No. 3:22-CV-00631 (AVC), 2022 WL 21756775, at \*7 (D. Conn. July 6, 2022), report and recommendation adopted (Oct. 7, 2022), aff'd, No. 22-3197, 2023 WL 7538211 (2d Cir. Nov. 14, 2023)).

Plaintiff has failed to demonstrate that any criminal charge(s), conviction, or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Zografidis, 2022 WL 21756775, at \*7. Although plaintiff's complaint wants for detail, the undersigned can clearly determine that plaintiff seeks review of his criminal proceedings, conviction, and/or sentence. The claims plaintiff seeks to pursue relate to allegations that he was denied due process, denied speedy trial rights, and experienced ineffective assistance of counsel. Accordingly, plaintiff's claims are barred by Heck unless and until he can demonstrate favorable termination of his criminal conviction. [7]

[7] The undersigned recognizes that claims that are determined to be barred by Heck are dismissed without prejudice. However, the undersigned has recommended dismissal with prejudice because

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)
2024 WL 4870495

plaintiff has only named defendants who are immune from relief. Accordingly, the undersigned is recommending dismissal of the claims based on these immunities, rather than a <u>Heck</u> dismissal. The undersigned has included the <u>Heck</u> review for sake of completeness.

### 3. Immunities

Plaintiff names as defendants several defendants who are immune from suit. Insofar as plaintiff names Hon. Michael W. Smrtic, Interim Montgomery County Judge and Tatiana N. Coffinger, "County/Family/Surrogate's Court Judge" [8] such claims would be barred by judicial immunity.

[8]   Although plaintiff provides no facts regarding any family court proceedings, that he named a family court judge and makes general reference to that he seeks review over actions taken by a family court judge. Even if plaintiff were to amend his complaint to provide facts about any possible family court proceedings and details about any alleged violations of his rights that he believes he faced in that Court, if plaintiff seeks this Court's review of an order of the family court, such review would be barred by <u>Rooker-Feldman</u>, and if plaintiff seeks this Court's review or intervention of a currently pending/ongoing Family Court proceeding, such review would be barred by <u>Younger</u>. <u>See</u> Porter v. Nasci, No. 5:24-CV-0033 (GTS/TWD), 2024 WL 1142144, at *4 (N.D.N.Y. Mar. 15, 2024) (citations omitted), <u>report and recommendation adopted</u>, 2024 WL 3158645 (N.D.N.Y. June 25, 2024) ("Under the <u>Rooker-Feldman</u> doctrine, a federal district court lacks authority to review a final state court order or judgment where a litigant seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment."); <u>see also</u> Diamond "D" Constr. Corp. v. McGowan, 282 F.3d 191, 198 (2d Cir. 2002) ("[F]ederal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings.").

**\*6** "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." Zavalidroga v. Girouard, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017)

(citing Mireles v. Waco, 502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity has been created for the public interest in having judges who are 'at liberty to exercise their functions with independence and without fear of consequences.' " <u>Id.</u> (quoting Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir. 2004)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." <u>Id.</u> (citation omitted); <u>see</u> Positano v. New York, No. 12-CV-2288 (ADS/AKT), 2013 WL 880329, at *4 (E.D.N.Y. Mar. 7, 2013) (explaining that the plaintiff may not bring action against a judge for actions taken in his judicial capacity, even when the actions violated the ADA).

"Judicial immunity is immunity from suit, not just immunity from the assessment of damages." Zavalidroga, 2017 WL 8777370, at *8 (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). "The only two circumstances in which judicial immunity does not apply is when he or she takes action 'outside' his or her judicial capacity and when the judge takes action that, although judicial in nature, is taken 'in absence of jurisdiction.' " <u>Id.</u> (quoting Mireles, 502 U.S. at 11-12). "In determining whether or not a judge acted in the clear absence of all jurisdiction, the judge's jurisdiction is 'to be construed broadly, and the asserted immunity will only be overcome when the judge clearly lacks jurisdiction over the subject matter.' " Pacherille v. Burns, 30 F. Supp. 3d 159, 163 (N.D.N.Y. 2014) (quoting Ceparano v. Southampton Just. Ct., 404 F. App'x 537, 539 (2d Cir. 2011) (summary order)). "Whether a judge acted in a judicial capacity depends on the nature of the act [complained of] itself, i.e., whether it is a function normally performed by a judge, and [on] the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." Ceparano, 404 F. App'x at 539 (internal quotation marks and citation omitted). "Further, if the judge is performing in his judicial capacity," he " 'will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction.' " Ceparano, 404 F. App'x at 539 (quoting Stump v. Sparkman, 435 U.S. 349, 362 (1978)). "Judges are not, however, absolutely 'immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity.' " Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (quoting Mireles, 502 U.S. at 11).

Thus, as plaintiff names the judicial defendants in relation to actions or omissions that they took in their roles as judges, their actions are protected by absolute judicial immunity. To the extent plaintiff names Hon. Felix Catena, "Retired

Administrative Law Judge," Judge Catena is also protected by absolute judicial immunity as a judge's retirement, "does not impact [his or] her immunity for acts taken in [his or] her official capacity before her retirement." McCray v. Lewis, No. 16-CV-3855 (WFK/VMS), 2016 WL 4579081, at *2 (E.D.N.Y. Aug. 31, 2016). To the extent plaintiff may seek to sue the judges their official capacities, the suit is barred by the Eleventh Amendment. See Pacherille v. Burns, 30 F. Supp. 3d 159, 163 n.5 (N.D.N.Y. 2014) ("The Eleventh Amendment shields judges from suit to the extent that they are sued in their official capacities.").

**\*7** In addition, plaintiff also references, exclusively in his "relief" section of the form complaint, "the Supreme Court Appellate Division, Third Department" when stating that he experienced "deliberate misconduct and malice." Compl. at 7. He does not name this Court as a defendant anywhere in the complaint. However, even if plaintiff were to have named the Appellate Division, Third Department as a defendant, such defendant would also need to be dismissed based on Eleventh Amendment immunity as the Appellate Division "is merely an agency or arm of New York State." Benyi v. New York, No. 3:20-CV-1463 (DNH/ML), 2021 WL 1406649, at *5 (N.D.N.Y. Mar. 23, 2021), report and recommendation adopted, No. 3:20-CV-1463, 2021 WL 1404555 (N.D.N.Y. Apr. 13, 2021) (citation omitted). Accordingly, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division as a defendant, such claims are barred by Eleventh Amendment immunity. See Compl.

Finally, insofar as plaintiff seeks to sue Prosecutor Samuel V. Maxwell, Esq., Assistant District Attorney, in addition to the Heck issues noted above, he would be protected by absolute prosecutorial immunity. As this Court has recently reiterated,

> Prosecutors enjoy "absolute immunity from § 1983 liability for those prosecutorial activities 'intimately associated with the judicial phase of the criminal process.' " Barr v. Abrams, 810 F.2d 358, 360-61 (2d Cir. 1987) (citing Imbler v. Pachtman, 424 U.S. 409, 430 (1976)). This immunity encompasses "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations and citation omitted). Absolute immunity applies when a prosecutor's conduct, acting as an advocate during the judicial phase of the criminal process, "involves the exercise of discretion." Flagler v. Trainor, 663 F.3d 543, 547 (2d Cir. 2011) (citing Kalina v. Fletcher, 522 U.S. 118, 127 (1997)).

Accordingly, absolute immunity extends to functions such as "deciding whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." Simon v. City of New York, 727 F.3d 167, 171 (2d Cir. 2013) (citing Imbler, 424 U.S. at 431 n.33); see also Flagler, 663 F.3d at 547 (explaining, "the Supreme Court has found prosecutors absolutely immune from suit for alleged misconduct during a probable cause hearing, in initiating a prosecution, and in presenting the State's case ... [but] withheld absolute immunity for conduct unrelated to advocacy, such as giving legal advice, holding a press conference, or acting as a complaining witness."). "[O]nce a court determines that challenged conduct involves a function covered by absolute immunity, the actor is shielded from liability for damages regardless of the wrongfulness of his motive or the degree of injury caused ...." Bernard v. Cnty. of Suffolk, 356 F.3d 495, 503 (2d Cir. 2004) (citing Cleavinger v. Saxner, 474 U.S. 193, 199-200 (1985)).

Williams v. Atkins, No. 5:24-CV-0573 (DNH/TWD), 2024 WL 3649849, at *5 (N.D.N.Y. June 11, 2024), report and recommendation adopted, No. 5:24-CV-573, 2024 WL 3548760 (N.D.N.Y. July 26, 2024).

Plaintiff appears to suggest that Mr. Maxwell "withheld potentially exculpatory material" that was used against him. Compl. at 4. Beyond the Heck barriers already discussed, even if plaintiff could amend to provide greater detail, absolute immunity would extent to even this alleged misconduct as such allegations clearly fall within the scope of prosecutorial immunity. Accordingly, it is recommended that any claims against ADA Samuel V. Maxwell be dismissed for absolute prosecutorial immunity. "Furthermore, because the District Attorney's prosecutorial immunity is substantive and not something that can be corrected by a better pleading, I recommend that the dismissal be with prejudice." Phillips v. New York, No. 5:13-CV-927, 2013 WL 5703629, at *5 (N.D.N.Y. Oct. 17, 2013) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 223 (2d Cir. 2000)). [9]

9    Plaintiff appears to characterize his submissions as a purported removal to federal court or suggests that he seeks to remove his case from Montgomery County Court to this Court. See Dkt. No. 7 (citing 28 U.S.C. § 1441). However, in addition

Cole v. Smrtic, Not Reported in Fed. Supp. (2024)

2024 WL 4870495

to the infirmities mentioned above, plaintiff has not demonstrated that any proceeding related to this complaint has been properly removed to, or is subject to removal to, this Court. See, e.g., 28 U.S.C. § 1446. Indeed, plaintiff's submissions appear to indicate that plaintiff is the plaintiff in the County Court action. See id. § 1446(a).

### III. Conclusion

**\*8** It is **ORDERED**, that plaintiff's in forma pauperis application (dkt. no. 2) be **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's section 1983 claims against Honorable Michael W. Smrtic; Tatiana N. Coffinger, County/Family/Surrogate's Court Judge; and Felix Catena, Retired Administrative Law Judge (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** as follows: (1) claims brought against them in their personal/individual capacities for judicial immunity, and (2) claims brought against them in their official capacities for Eleventh Amendment immunity; and it is further

**RECOMMENDED**, that plaintiff's section 1983 claims against Assistant District Attorney Samuel V. Maxwell (Dkt. Nos. 1, 7) be **DISMISSED WITH PREJUDICE** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that, to the extent a liberal reading of the complaint may suggest that plaintiff seeks to name the Appellate Division, Third Department, as a defendant (Dkt. Nos. 1, 7), such claims be **DISMISSED WITH PREJUDICE** as barred by Eleventh Amendment immunity, and it is

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically (dkt. no. 4) and motion to appoint counsel [10] (dkt. no. 5) be **DISMISSED AS MOOT** based on the above recommendations, and it is

[10] The undersigned also notes that plaintiff did not contend that he made any efforts to obtain counsel on his own, show proof of any attorneys he contacted. See Terminate Control Corp v. Horowitz, 28 F.3d 1335 (2d Cir. 1994). See Dkt. No. 5.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), parties have **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [11]

[11] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**All Citations**

Not Reported in Fed. Supp., 2024 WL 4870495

---

**End of Document** © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00402-ECC-CBF    Document 7    Filed 04/30/26    Page 18 of 52

Cole v. Smrtic, Not Reported in Fed. Supp. (2025)

2025 WL 247901

2025 WL 247901
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Matthew H. COLE, Plaintiff,
v.
Honorable Michael W. SMRTIC, Interim Montgomery County Judge; Tatiana N. Coffinger, County/Family/ Surrogate's Court Judge; Honorable Felix Catena, Retired Administrative Law Judge; and Samuel V. Maxwell, Esq., Assistant District Attorney, Defendants.

1:24-CV-847 (MAD/PJE)
|
Signed January 21, 2025

**Attorneys and Law Firms**

MATTHEW H. COLE, 271 Market Street, Amsterdam, New York 12010, Plaintiff pro se.

### ORDER

Mae A. D'Agostino, United States District Judge:

**\*1** Plaintiff commenced this action on May 6, 2024, asserting that Defendants violated his due process and speedy trial rights, and that he received ineffective assistance of counsel in an underlying state criminal action. *See* Dkt. No. 1. In a Report-Recommendation and Order dated November 21, 2024, Magistrate Judge Hummel granted Plaintiff's request to proceed *in forma pauperis* and conducted an initial review of the complaint. *See* Dkt. No. 8. In the Report-Recommendation and Order, Magistrate Judge Hummel concluded that, in addition to the complaint being subject to dismissal for failure to comply with Rule 8 of the Federal Rules of Civil Procedure, Plaintiff's due process, speedy trial, and ineffective assistance of counsel claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because Plaintiff's underlying state court conviction has not been reversed on direct appeal or otherwise expunged. *See id.* at 8-10. Moreover, the Report-Recommendation and Order recommended dismissal of the claims against Defendants Smrtic, Coffinger, and Catena since they are barred by absolute judicial immunity. *See id.* at 10-12. To the extent Plaintiff is attempting to assert a claim against the Appellate Division, Third Department, Magistrate Judge Hummel found that the claim is barred by Eleventh

Amendment immunity because the Appellate Division " 'is merely an agency or arm of New York State." *Id.* at 12-13 (quotation omitted). Finally, Magistrate Judge Hummel recommended that the claims against Defendant Maxwell be dismissed because he is protected by prosecutorial immunity. *See id.* at 13-14. Plaintiff has not objected to the Report-Recommendation and Order.

When a party files specific objections to a magistrate judge's report-recommendation, the district court "make[s] a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, when a party files "[g]eneral or conclusory objections, or objections which merely recite the same arguments [that he] presented to the magistrate judge," the court reviews those recommendations for clear error only. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*2 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

In the present matter, the Court finds that Magistrate Judge Hummel correctly determined that Plaintiff's complaint must be dismissed. Plaintiff's complaint makes clear that his claims stem from alleged violations of his rights that occurred during an underlying state criminal case. *See* Dkt. No. 1 at 3-4; Dkt. No. 7 at 4. Since Plaintiff's criminal conviction has not been reversed, expunged by executive order, or called into question by a federal court's issuance of a writ of habeas corpus, Plaintiff's claims brought pursuant to Section 1983 are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Strong v. Watson*, No. 1:22-cv-552, 2023 WL 8439445, \*14-15 (W.D.N.Y. Sept. 26, 2023) (dismissing the plaintiff's claims of malicious prosecution, conspiracy, speedy trial violations, denial of due process, and denial of equal protection under *Heck* because the claims "all seek to impugn the validity of his underlying state court criminal charges").

**\*2** Magistrate Judge Hummel also correctly determined that, in the alternative, the claims against the named Defendants are subject to dismissal based on absolute judicial and prosecutorial immunity. The allegations against Defendants Smrtic, Coffinger, and Catena make clear that these individuals were acting in their judicial capacities and that their actions were not taken in the absence of jurisdiction. Accordingly, they are entitled to absolute judicial immunity. *See Ceparano v. Southampton Just. Ct.*, 404 Fed.

Cole v. Smrtic, Not Reported in Fed. Supp. (2025)

2025 WL 247901

Appx. 537, 539 (2d Cir. 2011). As to Defendant Maxwell, Plaintiff has alleged that he withheld exculpatory evidence in the underlying criminal matter. Since this conduct clearly involves "prosecutorial activities 'intimately associated with the judicial phase of the criminal process,' " Defendant Maxwell is entitled to absolute prosecutorial immunity. *See Barr v. Abrams*, 810 F.2d 358, 360-61 (2d Cir. 1987) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Additionally, to the extent Plaintiff has attempted to assert claims against the Appellate Division, Third Department, the claims must be dismissed because the Third Department is an arm of New York State and is entitled to Eleventh Amendment immunity. *See Benyi v. New York*, No. 3:20-cv-1463, 2021 WL 1406649, *5 (N.D.N.Y. Mar. 23, 2021) (citation omitted).

Finally, the Court agrees with Magistrate Judge Hummel that, because it is clear that the issues with Plaintiff's complaint are substantive and not something that can be corrected by better pleading, Plaintiff will not be afforded an opportunity to amend his complaint. *See Phillips v. New York*, No. 5:13-cv-927, 2013 WL 5703629, *5 (N.D.N.Y. Oct. 17, 2013) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Accordingly, the Court hereby

**ORDERS** that Magistrate Judge Hummel's November 21, 2024, Report-Recommendation and Order (Dkt. No. 8) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED without leave to amend**; and the Court further

**ORDERS** that Plaintiff's motion for permission to file electronically (Dkt. No. 4) and motion to appoint counsel (Dkt. No. 5) are **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2025 WL 247901

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

McKie v. Kornegay, Not Reported in Fed. Rptr. (2022)
2022 WL 4241355

2022 WL 4241355
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Christopher MCKIE, Plaintiff-Appellant,
v.
Charles KORNEGAY, Irene
Kornegay, Defendants-Appellees. [1]

[1]   The Clerk of Court is respectfully directed to amend the caption as set forth above.

21-1943
|
September 15, 2022

Appeal from a judgment of the United States District Court for the Eastern District of New York (Matsumoto, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **VACATED IN PART** and **AFFIRMED IN PART,** and the appeal is **DISMISSED IN PART**.

**Attorneys and Law Firms**

For Plaintiff-Appellant: Christopher McKie, pro se, Brooklyn, New York.

For Defendants-Appellees: William V. DeCandido, William V. DeCandido, PC, Forest Hills, New York.

Present: Debra Ann Livingston, Chief Judge, Barrington D. Parker, Eunice C. Lee, Circuit Judges.

**SUMMARY ORDER**

**\*1** Appellant Christopher McKie, proceeding pro se, appeals from the August 2, 2021 order of the United States District Court for the Eastern District of New York (Matsumoto, *J.*), dismissing his claims with prejudice. McKie brought claims against the estate of Doris Dickinson, Charles Kornegay ("Charles") in his official capacity as administrator of the estate and in his individual capacity, and Irene Kornegay ("Irene"), asserting common law tort and contract claims premised on McKie's allegation that he was entitled to estate assets. The district court found that it lacked subject matter

jurisdiction because the parties were not diverse, that it would also lack subject matter jurisdiction over many claims under the probate exception to federal diversity jurisdiction, and that the complaint in any event failed to state a claim. For the following reasons, the judgment of the district court is **VACATED IN PART** and **AFFIRMED IN PART,** and the appeal is **DISMISSED IN PART**. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, which we reference here only as necessary to explain our decision.

**I. Subject Matter Jurisdiction**

On appeal from a dismissal for lack of subject matter jurisdiction, we review the district court's factual findings for clear error and its legal conclusions *de novo. Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). We "have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Federal subject matter jurisdiction is available when a federal question is presented, or when the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332.

McKie's complaint cites the statutes for both federal question and diversity jurisdiction. [2] However, McKie's brief does not identify any basis for federal question jurisdiction, and none is apparent—McKie's causes of action are state law tort and contract claims.

[2]   On appeal, McKie also argues that the district court should have considered whether jurisdiction existed under 28 U.S.C. §§ 1335 and 1343(a), but he fails to explain how either statute is applicable to this case. *See* 28 U.S.C. §§ 1343(a), 1335 (jurisdiction over certain civil rights and interpleader actions).

Diversity jurisdiction requires that the case be between "citizens of different States," 28 U.S.C. § 1332(a)(1), meaning "that there must be complete diversity, *i.e.*, that each plaintiff's citizenship must be different from the citizenship of each defendant," *Hallingby v. Hallingby*, 574 F.3d 51, 56 (2d Cir. 2009). "An individual's citizenship, within the meaning of the diversity statute, is determined by his domicile." *Van Buskirk v. United Grp. of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019) (quotation marks and citations omitted). The diversity statute specifies that "the legal representative of the estate of a

Case 1:26-cv-00402-ECC-CBF    Document 7    Filed 04/30/26    Page 21 of 52

McKie v. Kornegay, Not Reported in Fed. Rptr. (2022)
2022 WL 4241355

decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c)(2). The citizenship of the estate itself is, likewise, established by the citizenship of the decedent. *See Moore v. N. Am. Sports, Inc.*, 623 F.3d 1325, 1327 n.2 (11th Cir. 2010) (citing § 1332(c)(2)).

**\*2** McKie does not dispute that he is domiciled in New York, nor that Dickinson was domiciled in New York when she died. Instead, he argues that the district court overlooked that he also sued Irene and Charles, both South Carolina residents, individually. However, because McKie shared citizenship with any of the defendants, the district court lacked subject matter jurisdiction. *See Hallingby*, 574 F.3d at 56.

Having properly concluded that it lacked subject matter jurisdiction, the district court proceeded to consider the merits and dismiss the complaint with prejudice for failure to state a claim. That was error. A dismissal for lack of subject matter jurisdiction must be without prejudice, because "without jurisdiction, the district court lacks the power to adjudicate the merits of the case." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 54–55 (2d Cir. 2016). Accordingly, the district court's dismissal with prejudice of claims over which it found it lacked subject matter jurisdiction must be vacated.

Nevertheless, since the district court has already issued a final judgment over the remaining claims, we cure part of the jurisdictional defect here in the interest of finality, efficiency, and economy. *See United Republic Ins. Co., in Receivership v. Chase Manhattan Bank*, 315 F.3d 168, 170 (2d Cir. 2003) ("Once a district court has proceeded to final judgment, considerations of finality, efficiency, and economy become overwhelming, and federal courts must salvage jurisdiction where possible." (quotation marks and citations omitted)). To salvage jurisdiction, we dismiss the nondiverse defendants (i.e., the estate and Charles in his official capacity as administrator). *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party."); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 837 (1989) (recognizing that "courts of appeals have the authority to dismiss a dispensable nondiverse party" under Rule 21); *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 163 (2d Cir. 2001) ("[W]here a change in parties, necessary to the existence of jurisdiction, is appropriate and is made (even on or after appeal), appellate courts have acted as if the trial court had jurisdiction from the beginning of the litigation.").

To the extent that McKie seeks damages from Charles and Irene for their personal tortious conduct, the estate and its administrator are not necessary because the case can proceed "in equity and good conscience" without them. Fed. R. Civ. P. 19(b). The Supreme Court has cautioned that the appellate courts' authority to dismiss parties "should be exercised sparingly," and that remand may be required to resolve factual disputes as to whether the dismissal of a nondiverse party will prejudice other parties. *Newman-Green*, 490 U.S. at 837. Here, Charles and Irene will only benefit from the finality of a dismissal with prejudice, and McKie and the nondiverse defendants would be in the same position whether those defendants are severed from this case or this case is dismissed in its entirety without prejudice.

Still, we agree with the district court that the probate exception to diversity jurisdiction bars some of McKie's claims against Irene and Charles in their individual capacities. Under the probate exception, a federal court cannot exercise diversity jurisdiction over a complaint that seeks to (1) "administer an estate, probate a will, or do any other purely probate matter" or (2) "to reach a res in the custody of a state court." *Lefkowitz v. Bank of N.Y.*, 528 F.3d 102, 106 (2d Cir. 2007) (quotation marks, alterations, and emphasis omitted). The exception does not apply to actions that "seek[ ] damages from Defendants personally rather than assets or distributions from [the] estate," even if they are "intertwine[d]" with a probate action. *Id.* at 107–08. We agree with the district court's analysis that McKie's claims for breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, unjust enrichment, quantum meruit, and indebitatus assumpsit are barred by the probate exception because they essentially "seek[ ] to mask in claims for federal relief ... complaints about the maladministration of [the estate]" and "[t]o provide the relief Plaintiff seeks ... the federal court would have to assert control over property that remains under the control of the state courts." *Id.* at 107. However, the probate exception does not bar McKie's claims for fraudulent misrepresentation, fraudulent concealment, and tortious interference, which seek compensatory and punitive damages from Charles and Irene in their individual capacities.

**\*3** We therefore dismiss the estate and Charles in his official capacity from this action and proceed to consider the merits of the remaining claims against Charles and Irene in their individual capacities.

McKie v. Kornegay, Not Reported in Fed. Rptr. (2022)

2022 WL 4241355

## II. Merits

"We review a district court's grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Altimeo Asset Mgmt. v. Qihoo 360 Tech. Co.*, 19 F.4th 145, 147 (2d Cir. 2021) (quotation marks and citation omitted). Upon review of the record and relevant case law, we conclude that the district court's dismissal with prejudice of the remaining claims was correct. We affirm for substantially the same reasons stated by the district court in its August 2, 2021 memorandum and order, where it considered McKie's claims for fraudulent misrepresentation, fraudulent concealment, and tortious interference.

## III. Denial of Leave to Amend

Finally, the district court did not err in denying leave to amend. We review such denials for abuse of discretion, unless the denial is "based on an interpretation of law." *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 227 (2d Cir. 2018) (quotation marks and citation omitted). A district court generally should not dismiss a pro se complaint without granting at least one opportunity to amend, but amendment should be denied where the complaint gives no "indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

McKie does not explicitly challenge the denial of leave to amend in his appellate brief, but he does argue that the district court erred in denying a claim for an accounting, which he had identified as a claim that might be raised in an amended complaint. Such a claim relates to the estate and its administrator, and raising it would destroy the federal courts' diversity jurisdiction.

\* \* \*

Accordingly, the district court's dismissal with prejudice is **VACATED** in part and we **DISMISS**, without prejudice, all claims against the estate of Doris Dickinson and its administrator in his official capacity and all claims against Charles and Irene Kornegay that fall under the probate exception. As to the remaining claims against Charles and Irene Kornegay in their individual capacities, we have considered all of McKie's arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court in remaining part to dismiss those claims with prejudice.

**All Citations**

Not Reported in Fed. Rptr., 2022 WL 4241355

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00402-ECC-CBF Document 7 Filed 04/30/26 Page 23 of 52

2025 WL 1470840
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Justin SWINEA, Plaintiff,
v.
Adiva PETERS, et al., Defendants.

1:24-CV-01517 (MAD/PJE)
|
Signed May 22, 2025

**Attorneys and Law Firms**

Justin Swinea, 3401 8th St. NE, Apt. J, Minot, North Dakota 58704, Plaintiff pro se.

**REPORT-RECOMMENDATION & ORDER**

PAUL J. EVANGELISTA, United States Magistrate Judge

### I. **In Forma Pauperis**

 **\*1** Plaintiff commenced this action on December 12, 2024, with the filing of a complaint, and, in lieu of paying this Court's filing fee, an application for leave to proceed in forma pauperis ("IFP"). On December 16, 2024, plaintiff filed a pro se motion for permission to file electronically. *See* Dkt. No. 5. On January 6, 2024, plaintiff filed what he titled a Motion to Amend the Complaint. *See* Dkt. No. 6. The undersigned concludes that plaintiff financially qualifies to proceed IFP.[1] Thus, plaintiff's complaint must be assessed pursuant to 28 U.S.C. §§ 1915, 1915A.[2]

---

[1]  Plaintiff is advised that, despite being granted IFP status for this action, he is still required to pay any costs or fees he may incur in connection with this action.

[2]  Despite the statutory language referring to incarcerated individuals, these requirements apply equally to non-prisoner pro se litigants seeking to proceed in forma pauperis. *See* N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. § 1915(e)

(2) and 28 U.S.C. § 1915A when an application to proceed in forma pauperis is filed.").

### II. **Standard of Review**

A complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the pleading stage, the Court must assume the truth of "all well-pleaded, nonconclusory factual allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Iqbal*, 556 U.S. at 678). However, the Court need not accept as true "legal conclusions." *Iqbal*, 556 U.S. at 678. A pro se complaint is entitled to special solicitude and must be liberally construed, meaning that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

Nevertheless, even where a plaintiff has paid the filing fee, a district court may dismiss the complaint sua sponte if it determines that it lacks subject matter jurisdiction or that the complaint is frivolous. *See* FED. R. CIV. P. 12(h)(3); *Fitzgerald v. First E. Seventh Street Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000) (per curiam); *see Tyler v. Carter*, 151 F.R.D. 537 (S.D.N.Y. 1993), *aff'd*, 41 F.3d 1500 (2d Cir. 1994) ("The question is whether such claims asserted by a fee-paying plaintiff are subject to sua sponte dismissal by a district court under Rule 12(b)(6). I hold that they are. A plaintiff asserting fantastic or delusional claims should not, by payment of a filing fee, obtain a license to consume limited judicial resources and put defendants to effort and expense. The policies arguing against sua sponte Rule 12(b)(6) dismissals do not apply in these circumstances."). "An action is 'frivolous' when either: (1) 'the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy'; or (2) 'the claim is based on an indisputably meritless legal theory.' " *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)) (additional internal quotation marks and citations omitted). Further, a complaint that is "so confused, ambiguous, vague[,] or otherwise unintelligible that its true substance, if any, is well disguised," fails to comply with Rule 8 [of the Federal Rules of Civil Procedure]." *Salahuddin*

2025 WL 1470840

*v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988); *see Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995).

**\*2** The Court is required to construe pro se pleadings liberally and interpret them to raise the "strongest [claims] that they suggest." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted). At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, or arguments that the submissions themselves do not "suggest," that we should not "excuse frivolous or vexatious filings by pro se litigants," and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law[.]" *Triestman*, 470 F.3d at 477 (internal citations, quotation marks, and footnote omitted); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191-92 (2d Cir. 2008). "The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with ... the Federal Rules of Civil Procedure." *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994).

### III. Discussion

#### A. Amended Complaint

Plaintiff filed what he styled as a motion to amend the complaint on January 6, 2025. *See* Dkt. No. 6. However, review of the filing reveals that it is an amended complaint rather than a motion to amend. Further, as the original complaint had not yet undergone review and no service/summonses issued, plaintiff does not need permission to amend. *See* FED. R. CIV. P. 15(a); *see also Kelly v. Colonie Police Dep't*, 8:20-CV-0721 (GTS/CFH), 2020 WL 6445901, at \*1, n.1 (N.D.N.Y. Nov. 2, 2020).[3] An amended complaint supersedes and replaces the original complaint in its entirety, rendering it "of no legal effect," document number 6, the amended complaint, serves as the operative pleading. *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977), *cert. denied sub nom.*, *Vesco & Co., Inc. v. Int'l Controls Corp.*, 434 U.S. 1014 (1978); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). With the amended complaint, plaintiff did not, however, refile the exhibits. *See* Dkt. No. 6. Similarly, plaintiff's amended complaint has no caption and does not restate the names of all of the defendants against whom he seeks to proceed.

*See id.* Out of special solicitude to the pro se plaintiff, the undersigned will consider the list of defendants and exhibits included with the original complaint as part of my review of the amended complaint. The undersigned will not incorporate by reference any other portion of the original complaint. *See, e.g.*, *Granger v. City of Watertown*, No. 8:20-CV-189 (MAD/CFH), 2020 WL 8771258, at \*3 (N.D.N.Y. Dec. 17, 2020), *report and recommendation adopted*, No. 8:20-CV-189 (MAD/CFH), 2021 WL 485732 (N.D.N.Y. Feb. 10, 2021) ("To attempt to review with the incorporated portions of the original complaint together with the disjointed amended complaint would place too great a burden on the Court, and, if the matter proceeds past initial review, the defendants.").

[3]   Unless otherwise noted, the Court has provided plaintiff copies of the unpublished cases cited herein.

Plaintiff contends that he brings this action pursuant to 42 U.S.C. § 1983 for violations of his due process rights, denial of equal protection, "interference with Parental Rights," "Bias and Misconduct by CPS, Family Courts, and Law Enforcement," "violation of First Amendment Rights," "Unlawful Seizure of Plaintiff's Children," "Denial of Access to Justice," "Conspiracy to Deprive Civil Rights," and "Denial of Rights Under Color of Law." Dkt. No. 6 at 1.[4] Plaintiff seeks to sue Adiva Peters, the mother of his children; Honorable Elizabeth Walsh, Judge; Joseph Martin, Police Officer; Katherine Hicks Demps, Circuit Court Judge, Family; Robert Fitzpatrick, Police Officer; Douglas J. Broad, Attorney at Law; and a Doe "CPS Worker." Dkt. No. 1.

[4]   On the civil cover sheet filed with the original complaint, plaintiff checked all the boxes for basis of jurisdiction (U.S. Government Plaintiff, U.S. Government Defendant, Federal Question, and Diversity). Dkt. No. 1-14. He checked boxes indicating that he is both a citizen of New York and another state and that defendant is a citizen of another state. *See id.* He also checked a box indicating that the case involves "other civil rights," "other statutory actions," and "constitutionality of state statutes." *Id.* In response to the form's request that he indicate the U.S. Civil Statute under which he is filing, plaintiff wrote, "Due Process Clause violations, Civil Rights Act, other statutes, [illegible]." *Id.* Under a "brief description of cause," plaintiff wrote, "parental rights violation and Corrupt Organizations Act"

and indicated that he seeks $2-$7 million." *Id.* Although he references "Corrupt Organizations Act" in his civil cover sheet, plaintiff does not set forth any RICO claims in his amended complaint. *See id.*; Dkt. No. 6.

**\*3** Plaintiff contends that on September 18, 2023, January 4, 2024, and on seven occasions between October 2023 and March 2024, plaintiff submitted various motions for a temporary order of protection, sole legal and physical custody, "writ of habeas corpus," and "contempt motions" on which he was "deni[ed] of opportunity to present evidence." Dkt. No. 6 at 1. Plaintiff states that his motions "were ignored or dismissed without hearings or proper consideration, depriving Plaintiff of procedural fairness and the ability to present evidence, such as: Evidence of Adiva Peters's mental health issues (Exhibit A), Documentation of non-compliance with visitation and custody orders (Exhibit B), Photographs and medical records of children's injuries during her custody (Exhibit C)." *Id.* Plaintiff states that he was granted emergency custody on an unspecified date, but that custody "was amended without notice or participation, returning custody to Adiva Peters despite no legal justification (Exhibit C)." *Id.* Next, plaintiff argues that he was 'deni[ed] access to justice [b]y ignoring motions, denying hearings, and failing to address legitimate concerns." *Id.* at 2-3. He contends that he was "treated differently compared to others in similar situations in violation of his equal protection rights because he "was denied the right to self-represent after filing a complaint against court-appointed counsel." *Id.* Plaintiff further contends that there was judicial bias against him because "[c]ourts dismissed Plaintiff's concerns about the children's welfare but acted promptly on minor complaints by Adiva Peters." *Id.* He similarly alleges that "CPS and law enforcement displayed gender bias by favoring the mother despite her documented mental health issues and evidence of neglect." *Id.* Plaintiff further provides that CPS "failed to investigate Plaintiff's abuse and neglect reports despite evidence." *Id.* at 2.

Plaintiff asserts that "[d]efendants unlawfully interfered with Plaintiff's fundamental right to parent by: Ignoring custody violations. Returning custody to an unfit parent without due process. Failing to enforce protective orders." Dkt. No. 6 at 2. Plaintiff accuses "CPS, Family Courts and Law Enforcement" of "bias and misconduct," asserting that "[j]udges engaged in ex parte communications that adversely affected Plaintiff." *Id.* He further accuses defendants of "engag[ing] in coordinated actions" in conspiracy to deprive him of his civil rights, "including: Ex parte communications

between Kentucky and New York judges. CPS and law enforcement's failure to act on Plaintiff's reports while retaliating against him. Judicial amendments to custody orders based on fabricated or incomplete information." *Id.* at 2-3. Plaintiff also asserts that "[l]aw enforcement fabricated reports and dismissed valid welfare concerns, demonstrating systemic misconduct." *Id.* at 2. Next, plaintiff alleges that defendants "retaliated against Plaintiff for filing complaints and seeking redress, suppressing his freedom of speech and advocacy for his children." *Id.* He states that defendants amended custody orders "without notice or Plaintiff's participation" which he contends "constitutes an unlawful seizure of Plaintiff's children in violation of the Fourth and Fourteenth Amendments." *Id.*

Within his request for relief, plaintiff seeks the Court to order "an investigation into the handling of Plaintiff's family court case and law enforcement interactions," "compensatory damages for emotional distress and harm caused by Defendants' actions," punitive damages "[a]gainst officials for egregious or malicious conduct," and injunctive relief in the form of unspecified "orders to prevent future violations (e.g., policy changes, protection from further interference)." *Id.* at 3. Within his request for relief he seeks a "Temporary Restraining Order prohibiting defendants from interfering with Plaintiff's custodial rights or taking actions that may jeopardize the well-being of the children." *Id.* at 10. He further seeks "emergency temporary custody of Plaintiff's children to Plaintiff during the pendency of this case[.]" *Id.*

Within his amended complaint, plaintiff includes what he refers to as a "Motion for Emergency Temporary Custody Pursuant to Rule 65 of the Federal Rules of Civil Procedure" wherein he requests – in addition to making this request for relief in the "relief" section of his amended complaint – that this Court order him to be awarded custody of his children during the pendency of this case. Dkt. No. 6 at 11-12.

### B. **Analysis**

#### 1. **Venue**

Plaintiff provides that he is a resident of North Dakota. *See* Dkt. Nos. 1, 6. Of the defendants listed, only Hon. Elizabeth Walsh and Attorney Douglas J. Broda are residents of New York. *See* Dkt. No. 1. Plaintiff states that the remaining defendants reside in Kentucky. *See id.* at 2.

Venue in civil actions in federal court is governed by 28 U.S.C. § 1391(b), which provides,

**\*4** [a] civil action may be brought in—

(1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Although a plaintiff's choice of forum is generally granted "considerable weight,"

[w]hen a case is filed in a district in which venue is improper, the court "shall dismiss" the case or, "if it be in the interest of justice, transfer such case to any district ... in which it could have been brought." 28 U.S.C. § 1406(a) (emphasis added). Even if venue is proper, a district court may sua sponte transfer an action in the interest of justice and for the convenience of the parties and witnesses to any other district where it might have been brought. 28 U.S.C. § 1404(a); *Ferens v. John Deere Co.*, 494 U.S. 516, 530 (1990); *Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 79 n.17 (2d Cir. 1979) (citing cases); *Kelly v. Kelly*, 911 F.Supp. 70, 71 (N.D.N.Y. 1996).

*Hines v. Dell*, No. 5:20-CV-638 (TJM/ATB), 2020 WL 3100260, at \*2 (N.D.N.Y. June 11, 2020), *report and recommendation adopted*, No. 5:20-CV-638 (TJM/ATB), 2020 WL 4500677 (N.D.N.Y. Aug. 5, 2020).

Here, all defendants do not reside in this venue, 28 U.S.C. § 1391(b)(1), and this is not a situation where "there is no district in which an action may otherwise be brought," *id.* § 1391(b)(3). As plaintiff's amended complaint is factually sparse, it is not entirely clear whether this is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.* § 1391(b)(2). On balance, however, it appears at least some of the custody matters and orders of protection were entered within a court in this state

and District. *See* Dkt. No. 1-2. Accordingly, based on the information presently before the Court and at this early stage, it appears possible that venue may be proper under section 1391(b)(2); thus, the undersigned declines to recommend transfer.

### 2. **Domestic Relations Abstention Doctrine**

"Under the domestic relations exception ... cases involving divorce, alimony, and child custody remain outside federal court jurisdiction." *Bowman v. Morris*, No. 8:19-CV-97 (BKS/DJS), 2019 WL 5150196, at \*5 (N.D.N.Y. Apr. 10, 2019), *report and recommendation adopted*, No. 8:19-CV-97 (BKS/DJS), 2019 WL 3759174 (N.D.N.Y. Aug. 9, 2019) (citing *Marshall v. Marshall*, 547 U.S. 293, 308 (2006)). "When a case calls for a federal court to interpret state domestic relations law or 'immerse itself in domestic relations matters,' the court must abstain from proceeding with the case due to the state courts' 'greater interest and expertise' in that field." *Evans v. Adams*, 714 F. Supp. 3d 119, 124 (E.D.N.Y. 2024) (quoting *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990)).

**\*5** "Courts in this circuit routinely dismiss actions for lack of subject matter jurisdiction, due to the domestic relations abstention doctrine, where the plaintiff is seeking review of child [custody] proceedings." *Gerken v. Gordon*, No. 1:24-CV-00435 (MAD/CFH), 2024 WL 4608307, at \*6 (N.D.N.Y. Oct. 29, 2024), *report and recommendation adopted*, No. 1:24-CV-435 (MAD/CFH), 2024 WL 5001402 (N.D.N.Y. Dec. 6, 2024) (citing *Neustein v. Orbach*, 732 F. Supp. 333, 339-40 (E.D.N.Y. 1990) (holding that the Court lacked jurisdiction over factual disputes connected to domestic relations issues)); *Pynn v. Pynn*, No. 24-CV-508 (LJV), 2024 WL 3647783, at \*8 (W.D.N.Y. Aug. 5, 2024) (collecting cases and noting that "[c]ourts in this circuit have found abstention appropriate when the plaintiff asked a federal court to review and overturn state court rulings related to child custody[,] divorce[,] and child support[.]"). "While the domestic relations exception is narrow, it applies generally to issues relating to the custody of minors, and may also apply to civil rights actions directed at challenging the results of domestic relations proceedings." *Licata v. Kaplan*, No. 16-CV-2928 (JMA/GRB), 2017 WL 6379606, at \*11, n.7 (E.D.N.Y. Dec. 12, 2017) (quoting *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014)) (internal quotations omitted); *see also Guichiardo v. Barrazza*, No. 16-CV-1222, 2016 WL 3541547, at \*3 (E.D.N.Y. Jun. 23, 2016) (applying

the domestic relations exception where the plaintiff "style[d] some of her claims as raising constitutional issues, but the allegations stem from a state domestic relations matter ....").

Although plaintiff grounds his amended complaint in constitutional claims, it is clear from the face of the amended complaint that he seeks to challenge decisions made in Family Court proceedings and related child custody matters. He seeks this Court to intervene in state custody proceedings by directing the family courts to award plaintiff temporary custody and issue orders "to prevent future violations." Dkt. No. 6 at 3. Review of this action would require this Court "to interpret state domestic relations law or 'immerse itself in domestic relations matters' "; thus, "the court must abstain from proceeding with the case due to the state courts' 'greater interest and expertise' in that field." *Evans*, 714 F. Supp. 3d at 124. Accordingly, as this Court lacks subject matter jurisdiction to review these claims, it is recommended that the action be dismissed in its entirety.[5]

[5]    "[T]here is no requirement that a court address every single potential ground for dismissal where it is clear that a claim should be dismissed," *Gerken*, 2024 WL 4608307, at *5; however, the undersigned does note that if the underlying family court proceedings are ongoing, this Court is likely barred from reviewing the family court orders/ proceedings under the *Younger* abstention doctrine. *See Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002). If the Family Court proceedings are complete, this Court is likely barred from reviewing the Family Court orders/ proceedings under the *Rooker-Feldman* doctrine. *See Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) ("The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases.") (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)). Further, plaintiff's claims against Elizabeth Walsh and Katherine Hicks Demps are barred by judicial immunity. "With minor exceptions, judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions." *Zavalidroga v. Girouard*, No. 6:17-CV-682 (BKS/ATB), 2017 WL 8777370, at *8 (N.D.N.Y. July 7, 2017) (citing *Mireles v. Waco*,

502 U.S. 9, 9-10 (1991) (per curiam)). "Judicial immunity applies even when the judge is accused of acting maliciously or corruptly." *Id.* (citation omitted). Claims against Adiva Peters are also subject to dismissal as plaintiff has not shown, beyond vague, conclusory allegations, that Ms. Peters, a private actor, was " 'a willful participant in joint activity with the State or its agents.' " *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 195 (E.D.N.Y. 2010) (quoting *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002)) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). Next, plaintiff's amended complaint fails to demonstrate each defendants' personal involvement in the alleged constitutional violations as plaintiff largely refers collectively to "defendants" rather than specify each defendants' participation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). Plaintiff does not at all explain how Attorney Broda, the attorney for the children, *see* dkt. no. 1-4 at 15, is involved in his underlying constitutional violations allegations; however, the undersigned notes that attorney malpractice fails to amount to a constitutional claim. *See Caldwell v. Petros*, No. 1:22-CV-0567 (BKS/CFH), 2022 WL 15697608, at *3 (N.D.N.Y. Oct. 28, 2022), *report and recommendation adopted*, No. 1:22-CV-567 (BKS/CFH), 2022 WL 16918287 (N.D.N.Y. Nov. 14, 2022) ("[p]rivate attorneys, whether court appointed or privately retained, are not liable under 42 U.S.C. [§] 1983.") (citation omitted). To the extent he may seek to proceed against Broda for malpractice under New York State law, should all the federal claims be dismissed, the undersigned would recommend declining supplemental jurisdiction. *See* 28 U.S.C. § 1367(c) (3) (2006).

 **\*6**  Generally, "[a] pro se complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Gerken*, 2024 WL 4608307, at *15 (quoting *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (citation and internal quotation marks omitted)). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.' " *Id.* (citing *Edwards v. Penix*, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019)) (quoting *Cuoco v. Moritsugu*,

222 F.3d 99, 112 (2d Cir. 2000)). Here, a second amended complaint would not cure the defects the undersigned has identified. Accordingly, it is recommended that plaintiff not be provided leave to further amend.

### IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's IFP application, Dkt. No. 2, is **GRANTED**; and it is

**RECOMMENDED**, that plaintiff's Amended Complaint, Dkt. No. 6, including his request for a temporary restraining order, be **DISMISSED in its entirety without prejudice for lack of subject matter jurisdiction and without leave to amend**, and it is further

**RECOMMENDED**, that, insofar as plaintiff seeks to move to amend his complaint, Dkt. No. 6., such motion is **DENIED** as unnecessary, FED. R. CIV. P. 15(a); and it is further

**RECOMMENDED**, that plaintiff's pro se motion for permission to file electronically, Dkt. No. 5, be **DISMISSED as moot**; and it is

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72. [6]

[6]    If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. *See id.* § 6(a)(1)(c).

**All Citations**

Slip Copy, 2025 WL 1470840

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 1819710
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Justin SWINEA, Plaintiff,
v.
Adiva PETERS, et al., Defendants.

1:24-CV-1517 (MAD/PJE)
|
Signed July 2, 2025

**Attorneys and Law Firms**

JUSTIN SWINEA, Minot, North Dakota, Plaintiff Pro Se.

### MEMORANDUM-DECISION AND ORDER

Mae A. D'Agostino, United States District Judge:

### I. BACKGROUND

**\*1** On December 12, 2024, Plaintiff Justin Swinea commenced this action, *pro se*, against the following Defendants: the mother of Plaintiff's children, Adiva Peters, Rensselaer County Family Court Judge Elizabeth Walsh, Police Officer Joseph Martin, Circuit Family Court Judge Katherine Hicks Demps, Police Officer Robert Fitzpatrick, Attorney at Law Douglas J. Broda, and a "CPS Worker." Dkt. No. 1 at 1-2, 5. Plaintiff alleges, pursuant to 42 U.S.C. § 1983, denial of due process, denial of equal protection, interference with his parental rights, bias and misconduct by Child Protective Services ("CPS"), family courts, and law enforcement, violations of his First Amendment rights, unlawful seizure of Plaintiff's children, denial of access to justice, and conspiracy to deprive him of his civil rights. Dkt. No. 6 at 1-2. Plaintiff filed an application for leave to proceed *in forma pauperis* ("IFP") in lieu of paying the Court's filing fee. *See* Dkt. No. 2. Plaintiff also filed a *pro se* motion for permission to file electronically. *See* Dkt. No. 5.

On January 6, 2025, Plaintiff filed an Amended Complaint which he labeled as a motion to amend the complaint. *See* Dkt. No. 6. Plaintiff did not need permission to amend, and thus, the Amended Complaint supersedes the original complaint. FED. R. CIV. P. 15(a). In the Amended Complaint, however, Plaintiff did not refile the exhibits he provided with his original complaint, restate the names of Defendants,

or include a caption. *See* Dkt. No. 6. Affording special solicitude to the *pro se* Plaintiff, as the Court must, Magistrate Judge Paul J. Evangelista considered the list of Defendants and exhibits included with the original complaint as part of the Amended Complaint. *See* Dkt. No. 10 at 4-5; *see also Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (citing *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).

On May 22, 2025, Magistrate Judge Evangelista issued a Report-Recommendation and Order granting Plaintiff's IFP motion. *See* Dkt. No. 10 at 2. Magistrate Judge Evangelista also recommended dismissing Plaintiff's Amended Complaint without prejudice and without leave to amend. *See id.* at 12-13. Finally, Magistrate Judge Evangelista recommended denying Plaintiff's motion to amend his complaint as unnecessary and dismissing the *pro se* motion to file electronically as moot. *See id.*

When a party files specific objections to a magistrate judge's recommendations, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). To be specific, the objection must " 'identify [1] the portions of the proposed findings, recommendations, or report to which it has an objection and [2] the basis for the objection.' " *Boice v. M+W U.S., Inc.*, 130 F. Supp. 3d 677, 683 (N.D.N.Y. 2015) (quoting N.D.N.Y. L.R. 72.1(c)) (footnote omitted). However, when a party declines to file objections or files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews the recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). No objections to Magistrate Judge Evangelista's Report-Recommendation and Order have been filed; therefore, it will be reviewed for clear error.

**\*2** The Report-Recommendation and Order, which was mailed to Plaintiff on May 22, 2025, was returned to the Court as undeliverable on June 9, 2025. *See* Dkt. Nos. 10, 11. Under Local Rule 10.1(c)(2), "[a]ll ... *pro se* litigants must immediately notify the Court of any change of address." N.D.N.Y. L.R. 10.1(c)(2). This is emphasized in the *Pro Se* Handbook, which states as follows: "If at any time your own address changes you must immediately notify the Court in

writing." N.D.N.Y. *Pro Se* Handbook at 16. If a *pro se* litigant fails to notify the Court of a change of address, the Court may dismiss any pending action. *See* N.D.N.Y. L.R. 41.2(b). The *Pro Se* Handbook, Notice, and Local Rules were mailed via regular mail to Plaintiff on December 13, 2024. *See* Dkt. No. 3. The *pro se* notice was signed and returned by Plaintiff via regular mail, acknowledging receipt of the Court's rules and his obligations on January 6, 2025. *See* Dkt. No. 8.

Plaintiff has never seen the Report-Recommendation and Order because it was returned as undeliverable on June 9, 2025. *See* Dkt. Nos. 10, 11. Plaintiff had fourteen days in which to file written objections to the Report-Recommendation and Order, which lapsed on June 5, 2025. *See id.* However, given Plaintiff's *pro se* status, the Court waited an additional week before reviewing the Report-Recommendation and Order for Plaintiff to update his address and file objections. Plaintiff has not filed anything with the Court since January 6, 2025. *See* Dkt. Nos. 6, 7, 8.

"It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail." *Hurd v. Porter*, No. 9:11-CV-1388, 2014 WL 467894, *4 (N.D.N.Y. Feb. 6, 2014) (quoting *Dansby v. Albany Cnty. Corr. Facility*, No. 95-CV-1525, 1996 WL 172699, *1 (N.D.N.Y. Apr. 10, 1996)). "However, 'regardless of whether Plaintiff actually received notice that delay could result in dismissal, it remained his duty to diligently pursue his case and to inform this Court[ ] ... of any change of address.' " *Moloney v. West*, No. 1:24-CV-685, 2025 WL 828206, *2 (N.D.N.Y. Mar. 17, 2025) (quoting *Thornton v. Moroney*, No. 13-CV-8912, 2014 WL 2805236, *2 (S.D.N.Y. June 20, 2014)). "It is not the function of this Court to chase dilatory plaintiffs while other litigants in this district seek access to the courts." *Id.* (quotations and quotation marks omitted). A plaintiff's "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law.' " *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). Therefore, the Court will review the Report-Recommendation and Order for only clear error.

As explained in greater detail in the Report-Recommendation and Order, Plaintiff alleges that on September 18, 2023, January 4, 2024, and seven occasions between October 2023 and March 2024, motions for temporary orders of protection, sole legal and physical custody, "writ of habeas corpus," and "contempt" were submitted by Plaintiff and denied by

Defendant Walsh. *See* Dkt. No. 10 at 5-6; *see also* Dkt. No. 6 at 1. Plaintiff alleges his motions were denied without the opportunity to present evidence through a hearing nor were they properly considered. *See* Dkt. No. 6 at 1. Plaintiff contends this denied him procedural fairness. *See id.* Plaintiff contends Defendant Peters suffers from mental health issues and endangered his children, making her an unfit parent. *See id.* at 1-2. Plaintiff states that he was granted emergency custody, but it was amended without notice and custody was returned to Defendant Peters without legal justification. *See id.* at 1. Plaintiff avers he was deprived of his constitutional rights when "he was denied the right to self-represent after filing a complaint against court-appointed counsel." *Id.* at 2-3. He alleges judicial bias in the dismissal of his child welfare concerns. *See id.* He also claims that "CPS and law enforcement displayed gender bias by favoring the mother despite her documented mental health issues and evidence of neglect." *Id.*

**\*3** Plaintiff asserts "Defendants unlawfully interfered with [his] fundamental right to parent [ ] by [i]gnoring custody violations[, r]eturning custody to an unfit parent[, and] failing to enforce [a] protective order." *Id.* at 2. He alleges these acts of "retaliation" and mistreatment suppressed his freedom of speech and violated his constitutional rights. *Id.*

Plaintiff requests relief as follows: "an investigation into the handling of Plaintiff's family court case and law enforcement interactions," "compensatory damages for emotional distress and harm caused by Defendants' actions," "punitive damages [and injunctive relief] to deter future violations," and "nominal damages." *Id.* at 3. He also seeks emergency temporary custody of his children and a temporary restraining order prohibiting interference with his parental rights pursuant to Rule 65 of the Federal Rules of Civil Procedure. *See* Dkt. No. 6 at 1.

## II. DISCUSSION

### A. Venue

Plaintiff states he is a resident of North Dakota; therefore, Magistrate Judge Evangelista first addressed whether venue is appropriate in this Court. *See* Dkt. No. 10 at 8-9. Venue in civil actions in federal court is governed by 28 U.S.C. § 1391(b), which provides as follow:

A civil action may be brought in—

(1) a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). "The statutory standard for venue focuses ... on the location where the events occurred ... [and the court] must determine only whether a substantial part of the events giving rise to the claim occurred in [the district]." *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 868 (2d Cir. 1992) (quotations omitted). The "substantial" requirement allows selection of the appropriate district by balancing "the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant" to avoid "an unfair or inconvenient place for trial." *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432 (2d Cir. 1992) (citing *Leroy v. Great W. United Corp.*, 443 U.S. 173, 184 (1979)). " 'Substantiality' for venue purposes is more a qualitative than quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Id.* at 432-33 (citations omitted).

Of the six named Defendants, only two are residents of New York—Honorable Elizabeth Walsh and Attorney Douglas J. Broda—while the remaining reside in Kentucky. *See* Dkt. No. 6 at 5. However, Magistrate Judge Evangelista found that, on balance, "at least some of the custody matters and orders of protection were entered within a court in the state and District." Dkt. No. 10 at 9; *see also* Dkt. No. 1-2. If there are material acts within the forum state and they "bear a close nexus to the claims[,]" then they are deemed substantial enough to establish proper venue. *Daniel*, 428 F.3d at 433. Here, certain custody matters were held and orders of protection entered in family court in the State of New York in Rensselaer County, which "bear[s] a close nexus to the claims." *Id.*; *see also* Dkt. No. at 1-2. As Magistrate Judge Evangelista concluded, venue is appropriate under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or

omissions giving rise to the claim occurred" in this District. 28 U.S.C. § 1391(b)(2); *see* Dkt. No. 10 at 8-9.

**B. Domestic Relations Abstention Doctrine**

**\*4** "If the [C]ourt determines at any time that it lacks subject-matter jurisdiction, the [C]ourt must dismiss the action." FED. R. CIV. P. 12(h)(3). Under the domestic relations abstention doctrine, "[f]ederal courts [must] abstain from exercising their federal-question jurisdiction over claims involving domestic-relations issues" unless the plaintiff can show there is "an obstacle that prevents him from receiving a full and fair determination of those issues in the state courts." *Ganiyu v. Lopez*, No. 1:19-CV-11605, 2020 WL 1467356, \*3 (S.D.N.Y. Mar. 25, 2020) (citing *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990)); *see also United States v. Windsor*, 570 U.S. 744, 766 (2013) (" '[R]egulation of domestic relations' is 'an area that has long been regarded as a virtually exclusive province of the States' ") (citing *Sosna v. Iowa*, 419 U.S. 393, 404 (1975)). [1]

[1] The Second Circuit has noted in recent cases that there is a difference between the "domestic relations exception" and the "domestic relations abstention doctrine." The "domestic relations exception" applies to diversity jurisdiction cases, *see Ankenbrandt v. Richards*, 504 U.S. 689, 692 (1992), while the "domestic relations abstention doctrine" applies to federal-question jurisdiction cases, *see Mochary v. Bergstein*, 42 F.4th 80, 89 (2d Cir. 2022) (citing *Am. Airlines, Inc. v. Block*, 905 F.2d 12 (2d Cir. 1990)).

The domestic relations abstention doctrine encompasses "cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992); *see also Cashman v. Rosenberger*, No. 1:05-CV-0640, 2005 WL 1331127, \*2 (N.D.N.Y. June 1, 2005) (noting that, for over a century, the Supreme Court has held that " 'the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States' ") (quoting *Ex parte Burrus*, 136 U.S. 586, 594 (1890)). The domestic relations abstention doctrine can apply even where the plaintiff "style[d] some of [the] claims as raising constitutional issues, but the allegations stem from a state domestic relations matter ...." *Guichardo v. Barraza*, No. 16-CV-1222, 2016 WL 3541547, \*3 (E.D.N.Y. June 23, 2016) (citations omitted).

Here, Plaintiff seeks to bring this action under federal question jurisdiction because he alleges constitutional violations pursuant to 42 U.S.C. § 1983; however, the content he seeks to challenge concerns decisions made in family court and related child custody matters. *See* Dkt. No. 6. Magistrate Judge Evangelista concluded that Plaintiff's complaint asks the Court to interpret state domestic relations law, which is exclusively regulated by the states. *See* Dkt. No. 10 at 11. *See Windsor*, 570 U.S. at 766 (citing *Sosna*, 419 U.S. at 404). Magistrate Judge Evangelista is correct. Plaintiff asks for an investigation into the handling of a family court case and related law enforcement interactions. *See* Dkt. No. 6 at 3. These issues and Plaintiff's requested remedies are of the subject of domestic relations, as they refer to custody and family court proceedings. As such, Magistrate Judge Evangelista is correct in concluding that this Court lacks subject matter jurisdiction over the purported claims, and the action should be dismissed.

Finally, it is discouraged for a district court to " 'dismiss a *pro se* complaint without granting the plaintiff leave to amend, [unless it] would be futile.' " *Johnson v. Oneida Nation Enters., LLC*, No. 5:19-CV-853, 2019 WL 5091952, *2 (N.D.N.Y. Oct. 11, 2019) (quoting *Tylicki v. Schwartz*, 401 Fed. Appx. 603, 604 (2d Cir. 2010)) (additional citation omitted). Here, amendment would be futile because Plaintiff has not alleged any claims that would confer subject matter jurisdiction because the subject of his complaint relates to domestic relations matters—claims over which the Court must abstain. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that if the problems with the causes of action are substantive, better pleading would not cure it); *see also Hernandez v. Conriv Realty Assocs.*, 182 F.3d 121, 123 (2d Cir. 1999) ("[W]here a court lacks subject matter jurisdiction, it also lacks the power to dismiss with

prejudice"). Accordingly, Magistrate Judge Evangelista's recommendation to deny leave to amend is appropriate.

### III. CONCLUSION

**\*5** After carefully reviewing Plaintiff's submissions, Magistrate Judge Evangelista's Report-Recommendation and Order, and the applicable law, the Court hereby

**ORDERS** Magistrate Judge Evangelista's Report-Recommendation and Order (Dkt. No. 10) is **ADOPTED in its entirety** for the reasons set forth herein; and the Court further

**ORDERS** Plaintiff's Amended Complaint (Dkt. No. 6) is **DISMISSED without prejudice and without leave to amend**; and the Court further

**ORDERS** Plaintiff's motion for permission to file electronically (Dkt. No. 5) is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 1819710

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2019 WL 2717900

2019 WL 2717900
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jacob LAWLER, Plaintiff,
v.
VIAPORT NEW YORK, LLC;
Terri Emond, Defendants.

1:19-CV-548 (GLS/CFH)
|
Signed 06/28/2019

**Attorneys and Law Firms**

Jacob Lawler, 2723 Wellington Avenue, Schenectady, New York 12306, Plaintiff pro se.

**REPORT-RECOMMENDATION & ORDER**

Christian F. Hummel, U.S. Magistrate Judge

**\*1** Plaintiff pro se Jacob Lawer commenced this action on May 8, 2019, with the filing of a complaint and an application to proceed in forma pauperis ("IFP"). Dkt. No. 1 ("Compl."), Dkt. Nos. 2-4. Plaintiff has also filed a motion for appointment of counsel. Dkt. No. 3. After reviewing plaintiff's application, the undersigned concludes that plaintiff may properly proceed IFP for purposes of filing. The undersigned must now assess plaintiff's complaint pursuant to 28 U.S.C. § 1915(e).

**I. Initial Review**

**A. Legal Standard**

Section 1915(e) of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that ... the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed with his action.

Pleading guidelines are set forth in the Federal Rules of Civil Procedure. Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8 (a)(2). "The purpose ... is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Flores v. Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations omitted). Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought....

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make clear that each allegation contained in the pleading "must be simple, concise, and direct." Id. at 8(d).

Further, Rule 10 of the Federal Rules provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 54 (internal quotation marks and citations omitted).

In deciding whether a complaint states a colorable claim, a court must extend a measure of deference to pro se litigants,

Lawler v. ViaPort New York, LLC, Not Reported in Fed. Supp. (2019)

2019 WL 2717900

Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), also referred to as "special solicitude." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006). However, the court also has an obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed. See, e.g., Fitzgerald v. First E. Seventh St. Tenants Corp., 221 F.3d 362, 363 (2d Cir. 2000). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citations omitted). In such cases of dismissal, particularly when reviewing a pro se complaint, the court generally affords the plaintiff an opportunity amend the complaint as long as there is a possibility that an amendment would be able to cure the identified defects. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995). A court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

### B. Allegations in Complaint

 **\*2** Although plaintiff does not identify the statute under which his claims arise, it appears that plaintiff seeks to bring this action pursuant to 42 U.S.C. § 1983, as he completed his complaint on the form civil rights complaint. Dkt No. 1 ("Compl."). Plaintiff's complaint is very sparse and lacking in detail. Id. He contends that on February 8, 2018, he called OSHA "due to fire hazards." Id. at 2. He was terminated on February 15, 2018, "for something that had nothing to do with me that supposedly [sic] happened February 1 2018 into February 2nd 2018." Id. For his causes of action, plaintiff provides that he wishes "to negotiate/mediate with the defendant," "continue the lawsuit with defendant," "[p]ut

on the news/in newspapers and make the lawsuit public," and "[a] settlement so that I am able to fix my credit and to show them that what they did was wrong/hope they learn from their mistake." Id. at 3. No other information is provided; however, plaintiff does attach a right to sue letter from the U.S. Equal Employment Opportunity Commission dated February 21, 2019. Compl. at 5.

First, although plaintiff does not cite the First Amendment, he arguably may be attempting to set forth a First Amendment claim against defendants for retaliating against him for exercising his First Amendment free speech rights. See generally Compl. However, to the extent plaintiff seeks to do as such, his claim must fail as none of the defendants have acted under the color of state law as plaintiff utterly fails to show that defendants ViaPort New York, LLC and Terri Emond are state actors. ViaPort New York, LLC is not a public entity; thus, plaintiff would not be a public employee. Although plaintiff does not identify Terri Emond, the Court can assume based on the context of the information provided that she was a supervisory or management employee with ViaPort New York, LLC. The complaint makes no allegation whatsoever that Terri Emmond acted under color of state law. Accordingly, insofar as plaintiff's complaint may be interpreted as attempting to set forth a First Amendment retaliation claim, it is recommended that this claim be dismissed with prejudice for failure to state a claim upon which relief can be granted.

Second, plaintiff is likely attempting to proceed under the New York State whistleblower statute.

> New York State's Whistleblower Statute prohibits an employer from "tak[ing] any retaliatory personnel action against an employee ... [who] discloses ... an activity, policy or practice of the employer that is in violation of law, rule or regulation which violation creates and presents a substantial and specific danger to the public health or safety." N.Y. LAB. LAW § 740(2)(a); see also Calabro v. Nassau Univ. Med. Ctr., 424 F.Supp.2d 465, 475 (E.D.N.Y. 2006). The Whistleblower Statute, however, "does not extend its protections to those who complain of any unlawful conduct by the employer." Collette v. St. Luke's Roosevelt Hosp., 132 F.Supp.2d 256, 268 (S.D.N.Y. 2001); see, e.g., Remba v. Fed'n Emp't & Guidance Serv., 76 N.Y.2d 801, 802-03 (N.Y. 1990) (holding that § 740 does not protect an employee who reports fraudulent billing). Here, because the conduct complained of by Burnett, namely misusing the company gas credit card, could in no imaginable way create or present a "substantial and specific

danger to the public health or safety," the court dismisses any claim brought pursuant to § 740.

Burnett v. Trinity Inst. Homer Perkins Ctr., Inc., No. 1:10-CV-681 (GLS/DRH), 2011 WL 281023, at *4 (N.D.N.Y. Jan. 25, 2011). [1] However, the New York State Whistleblower Statute is not a federal law, but state law. Thus, it cannot be reviewed in federal court, absent either diversity jurisdiction or if this Court chooses to review it pursuant to its supplemental jurisdiction.

[1]    Unpublished cases cited herein have been provided to plaintiff pro se.

To properly allege diversity jurisdiction, plaintiff must allege (1) diversity of citizenship between the parties, and (2) an amount in controversy that exceeds $75,000. See 28 U.S.C. § 1332(a). Here, plaintiff cannot establish diversity jurisdiction because plaintiff and defendants are all citizens of the same state, New York. See Compl. Although plaintiff, in his civil cover sheet, seeks damages greater than $75,000, dkt. no. 1-1, because plaintiff cannot establish that he and all defendants are citizens of different states, plaintiff has failed to establish, and cannot establish, the existence of diversity jurisdiction.

 *3  In addition, plaintiff has also failed to establish federal question jurisdiction as he has not set forth a valid federal law claim. 28 U.S.C. § 1331 confers onto federal courts subject matter jurisdiction over all federal questions, or "all civil actions arising under the Constitution, laws, or treaties of the United States." Federal question jurisdiction exists where the complaint "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on a resolution of a substantial question of federal law." Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983). Although, generally, this Court has the discretion to exercise its supplemental jurisdiction to review state law claims in some cases, Block v. First Blood Assocs., 988 F.2d 344, 351 (2d Cir. 1993), where there is no meritorious federal claim before the Court, the district court should decline to exercise its supplemental jurisdiction to review any related state law claims. See, e.g., Purgess v. Sharrock, 33 F.3d 134 (2d Cir. 1994); 28 U.S.C. § 1367(c). Accordingly, it is recommended that plaintiff's retaliation claim pursuant to New York State whistleblower law be dismissed with prejudice, but without prejudice to replead in the appropriate state court, should he wish to do so. [2]

[2]    The undersigned makes no comment as to the success of claim, or the ability to bring such claim, in state Court.

Generally, in cases involving pro se plaintiffs, a court should not dismiss a complaint without granting leave to amend "at least once" "when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 704-05 (2d Cir. 1991). However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); see also Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Although the undersigned recognizes that dismissal with prejudice is a harsh remedy, leave to amend would be futile as the defects in plaintiff's claims cannot be cured with a better pleading as the problems are substantive. Cuoco, 222 F.3d at 112; Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993). Accordingly, it is recommended that dismissal be with prejudice and without opportunity to amend.

## II. Motion for Counsel

Plaintiff requests the appointment of counsel in this case. Dkt. No. 3. He indicates that he has contacted two law firms and that he is unable to retain counsel because he cannot afford the fees. Id. As the undersigned recommends dismissal of plaintiff's complaint without leave to amend, plaintiff's motion for counsel is denied. However, the denial is without prejudice to replead should the circumstances change.

## III. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's motion to proceed in forma pauperis, dkt. no. 2, is **GRANTED** for the purposes of filing; and it is furher

**ORDERED**, that plaintiff's motion for the appointment of counsel, dkt. no. 3, is **DENIED without prejudice** and with leave to renew should his circumstances change; and it is

**RECOMMENDED**, that plaintiffs complaint, dkt. no. 1, be **DISMISSED with prejudice and without leave to amend**, but **without prejudice to plaintiff seeking to bring his claim in the appropriate state court**, should he wish to do so; and is

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation & Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72. [3]

[3] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day hat is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).

**All Citations**

Not Reported in Fed. Supp., 2019 WL 2717900

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

**2019 WL 6134180**
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Jacob LAWLER, Plaintiff,
v.
VIAPORT NEW YORK, LLC, et al., Defendants.

1:19-CV-548 (GLS/CFH)
|
Signed 11/19/2019

**Attorneys and Law Firms**

Jacob Lawler, Schenectady, NY, pro se.

### ORDER

[Gary L. Sharpe](), U.S. District Judge

 **\*1**  On June 28, 2019, Magistrate Judge Christian F. Hummel issued a Report-Recommendation & Order (R&R), which granted plaintiff *pro se* Jacob Lawler's application to proceed *in forma pauperis* and recommended that his complaint, (Compl., Dkt. No. 1), be dismissed in its entirety with prejudice and without leave to amend, but without prejudice to bring his claim in the appropriate state court. (Dkt. No. 5 at 8-9.) Judge Hummel also recommended that Lawler's motion for the appointment of counsel be denied without prejudice. (*Id.* at 9.) Pending are Lawler's objections to the R&R. (Dkt. No. 6.) For the reasons that follow, the R&R is adopted in its entirety.

First, Lawler's objections are untimely. When a report and recommendation is filed, the parties have fourteen (14) days from receipt of the report to file specific, written objections to proposed findings and recommendations. *See* [28 U.S.C. § 636(b)(1)(C)](); [Fed. R. Civ. P. 72(b)(2)](); N.D.N.Y. L.R. 72.1(c). Three (3) additional days are added to the fourteen-day period when the plaintiff is served with the report by mail. *See* [Fed. R. Civ. P. 6(d)](). Lawler's objections were due on or before July 15, 2019, and he did not object until July 17, 2019, (Dkt. No. 6), making his objections untimely. Nevertheless,

in light of Lawler's *pro se* status, the court has considered his untimely objections for clear error. *See [Almonte v. N.Y. State Div. of Parole](),* No. Civ. 904CV484, 2006 WL 149049, at \*5-6 (N.D.N.Y. Jan. 18, 2006).

Additionally, although Lawler asserts that he "object[s] to the R&R," (Dkt. No. 6 at 1), he does not actually raise any specific objections with the R&R's legal analysis. Instead, he asks for "an ap[p]eal to bring [his] claim ... to a [New York state court]," and provides additional information regarding the facts giving rise to his complaint. (*Id.* at 1-3.) Thus, even if Lawler's "objections" were timely, they still trigger review for clear error only. *See [Almonte](),* 2006 WL 149049, at \*5-6. The court, having carefully reviewed the record, finds no clear error in the R&R and adopts it in its entirety.

Without commenting on whether Lawler's claims have merit, or whether he has the ability to bring such claims in state court, it is noted that according to 42 U.S.C. § 1367(d), the period of limitations for Lawler's claims shall be tolled for a period of thirty (30) days after the filing of this Order, unless New York law provides for a longer tolling period. [1]

[1]    New York law appears to provide for a longer tolling period of six months. *See* [N.Y. C.P.L.R. 205(a)]().

Accordingly it is hereby

**ORDERED** that the R&R (Dkt. No. 5) is **ADOPTED** in its entirety; and it is further

**ORDERED** that Lawler's complaint (Dkt. No. 1) is **DISMISSED**; and it is further

**ORDERED** that the Clerk close this case and provide a copy of this Order to Lawler in accordance with the Local Rules of Practice.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2019 WL 6134180

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2722411

2025 WL 2722411
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Shawn Taylor GAMMONS, Plaintiff,
v.
Samantha Anna-Kay CODY, et al., Defendants.

1:25-CV-941 (AJB/DJS)
|
Signed September 2, 2025

**Attorneys and Law Firms**

SHAWN TAYLOR GAMMONS, Plaintiff, Pro Se, Albany, New York 12206.

## REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

**\*1** The Clerk has forwarded for review a civil Complaint filed by Plaintiff. The Complaint was filed July 17, 2025. Dkt. No. 1, Compl. The filing fee in this action has not been paid, but Plaintiff has filed a motion to proceed *in forma pauperis*. Dkt. No. 2. That Motion has been granted. The matter has been referred to the undersigned for an initial review pursuant to L.R. 72.3.

## I. FACTUAL ALLEGATIONS IN THE COMPLAINT

Plaintiff Shawn Taylor Gammons and Defendant Samantha Anna-Kay Cody were married and have two children together, S.N. and S.M. *See generally*, Compl. Plaintiff and Defendant are now separated, and Samantha Cody now resides with Defendant Derek Cody, in Freehold, New York. Compl. at ¶¶ 7 & 8. The children live with their mother in Freehold, while Plaintiff lives in Albany, New York. Compl. at ¶¶ 5 & 6. In March 2025, domestic strife between Samantha Cody and Derek Cody precipitated a custody proceeding in Greene County Family Court. Compl. at ¶¶ 18 & 19. This matter was assigned to Defendant Family Court Judge Charles Tailleur and, it appears, is still ongoing. Judge Tailleur appointed Defendant Andrea Gamalski to represent Plaintiff, Defendant Sondra Smith to represent Defendant Samantha Cody, and Defendants Max Zacker and James Gross to represent S.N. and S.M. Gammons respectively. Compl. at ¶¶ 12-15. Plaintiff

alleges these court appointed attorneys capitalized on a bias against him, failed to make proper motions, provided ineffective counsel for his children, and refused to submit favorable evidence. Compl. at ¶¶ 22 & 31.

Judge Tailleur issued, and at times extended, a temporary order of protection against Plaintiff, ordered him to pay child support, and ordered to Plaintiff to serve 30 days in Greene County Jail on account of his failure to do so. Plaintiff alleges that he was not given sufficient notice of the hearing for a temporary order of protection. He further alleges that the child support determinations of both Judge Tailleur and Defendant Sarah Richards, a child support magistrate, are without legal justification or jurisdiction, and that conclusions of his violation and the subsequent jail time are based on erroneous information provided to Greene County Family Court by Samantha and Derek Cody. Specifically, Plaintiff contests the sum of $27,000 owed in child support as discharged by Judge Tailleur in an earlier proceeding. Plaintiff alleges, as part of a broader conspiracy, that his testimony was systematically excluded, while representations by Defendants, including court appointed attorneys, were admitted despite what he contends are either biases or outright lies. Plaintiff also takes issue with the denial of certain proposed conditions of custody issued by Judge Tailleur. *See generally* Compl.

Plaintiff also lists his children as plaintiffs in this action. He claims his children were prevented from participating in the Family Court proceedings, exposed to domestic violence by Samantha and Derek Cody, and that S.N.G. was body-slammed by a New York State Trooper and ordered to enroll in a Pre-Person's In Need of Supervision program without due process. *Id.*

**\*2** Plaintiff also claims he has been denied custodial, visitation, and parental rights with respect to S.N. and S.M. He further claims that Samantha Cody attempted to prevent court-appointed attorneys from interviewing the children in relation to the custody proceeding. *Id.*

Plaintiff alleges violations of his Fourth, Sixth, Seventh, Thirteenth, and Fourteenth Amendment rights by the Defendants. Plaintiff also claims common law conversion as against Defendants Samantha and Derek Cody. Finally, he appears to allege a separate due process violation against Columbia and Greene Counties. In his prayer for relief, Plaintiff demands a jury trial and requests the arrest and deportation of Samantha Cody, sole legal and residential custody of S.N. and S.M., discharge of his child support

obligations, impeachment of all public officers named as Defendants in the case, a public apology, and derivative use immunity. Compl. at pp. 15-16

## II. GOVERNING LEGAL STANDARD

28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [1]

[1]   To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands

more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

## III. DISCUSSION

### A. Plaintiff's Claims on Behalf of his Children

**\*3**  It appears that Plaintiff may intend to assert claims on behalf of his children. The Complaint identifies Plaintiff's children as Plaintiffs. Compl. at p. 2. The children have not signed the Complaint. While a litigant in federal court has the right to act as her own counsel, "[a] person who has not been admitted to the practice of law may not represent anybody other than [her]self." *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citation omitted). This rule extends to parents: "a parent not admitted to the bar cannot bring an action pro se in federal court on behalf of his or her child." *Tindall v. Pultney High School Dist.*, 414 F.3d 281, 284-85 (2d Cir. 2005). [2] As a result, any claim brought on behalf of the children should be dismissed. *H.B. v. Brookdale Hosp.*, 2022 WL 17539117, at \*2 (E.D.N.Y. Dec. 8, 2022). [3]

[2]   This is particularly true where as here "one parent is attempting to bring suit on behalf of a child against the other parent." *Mulready v. Mulready*, 2007 WL 1791120, at \*1 (D. Conn. June 16, 2007).

[3]   The sole factual allegation in the Complaint against a State Trooper identified only as John Doe relates to allegations of alleged assault against one of Plaintiff's children. Compl. at ¶ 17. Since there is no allegation that Doe violated Plaintiff's rights, it is recommended that that claim be dismissed.

### B. Judicial Immunity

Judge Charles Tailleur continues to preside over Family Court proceedings involving Plaintiff and Defendants Samantha Anna-Kay Cody and Derek Cody. All claims against Judge Tailleur arise out of actions taken in his judicial capacity. At a March 24, 2025 appearance, Judge Tailleur took testimony from the parties and issued a temporary order of protection

against Plaintiff. Compl. at ¶¶ 22 & 29. At an April 7, 2025 appearance, Judge Tailleur extended the temporary order of protection and elicited more testimony from the parties. Compl. at ¶ 29. Finally, at a May 5, 2025 appearance, Judge Tailleur made several determinations on the issue of custody, including with respect to a pick-up/drop-off location and visitation, and further extended the temporary order of protection. Compl. at ¶ 31. Plaintiff contends that Judge Tailleur gave no legal justification for his rulings on custody or visitation, or his extensions to the temporary order of protection.

Judicial immunity is applicable to conduct taken by the court as part of its judicial power and authority, and its absolute protection extends to all judicial acts except those performed in the clear absence of all jurisdiction. *See Pierson v. Ray*, 386 U.S. 547, 554 (1967). The Supreme Court has emphasized that the scope of a judge's jurisdiction must be construed broadly. *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (citing *Bradley v. Fisher*, 80 U.S. 335, 336 (1871)). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994).

"Judicial immunity is overcome in only two circumstances: (1) a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity; and (2) a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *McCluskey v. Roberts*, 2022 WL 2046079, at *5 (2d Cir. June 7, 2022) (internal quotation omitted). Acts related to a specific case, such as the orders of protection and support determinations at issue here, are clearly judicial in nature. *Bliven v. Hunt*, 579 F.3d at 210. And "[j]udicial immunity applies to these judicial acts even if they were allegedly done maliciously or corruptly." *McCluskey v. Roberts*, 2022 WL 2046079, at *5. For these reasons, no exception to the immunity doctrine applies and claims against Judge Tailleur should be dismissed.

 **\*4** Defendant Richards is identified as a New York Support Magistrate. Compl. at ¶ 10. Plaintiff's claims against Defendant Richards concern her role in child support determinations made on June 4, 2025. Plaintiff contests Richards's assessment that Plaintiff owes $27,000 in child

support to Samantha Cody and claims the sum was discharged as a result the divorce agreement he entered with his ex-wife in 2010. He further takes issue with Richards's demands to appear at a July 18, 2025 hearing with copies of certain court records so that Judge Tailleur can properly adjudicate his case. These actions are also within the scope of judicial immunity as they are an extension of the Court's custodial proceedings. *See Gerken v. Gordon*, 2024 WL 4608307, at *8 (N.D.N.Y. Oct. 29, 2024) (child support magistrate found immune from suit under doctrine of judicial immunity); *Clay v. Bishop*, 2023 WL 3352903, at *4 (N.D.N.Y. Feb. 7, 2023), *report and recommendation adopted*, 2023 WL 2910545 (N.D.N.Y. Apr. 12, 2023). Thus, claims against Defendant Richards must also be dismissed.

The vast breadth of judicial immunity also protects judicial staff. *See Rodriguez v. Weprin*, 116 F.3d 62, 66-67 (2d Cir. 1997) ("A court's inherent power to control its docket is part of its function of resolving disputes between parties. This is a function for which judges and their supporting staff are afforded absolute immunity."). "Judicial immunity has been extended to court clerks and others who perform functions closely associated with the judicial process when they are performing discretionary acts of a judicial nature which are essential to the judicial process, especially the filing of court documents and managing a court's calendar." *Kellier v. Ross*, 2022 WL 1292290, at *4 (S.D.N.Y. Apr. 29, 2022) (internal quotation omitted) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985) and *Rodriguez v. Weprin*, 116 F.3d at 66). "Court clerks have absolute immunity from civil liability based on actions they take in helping process cases, even if such actions are 'ministerial' or 'administrative.' " *Foy v. New York State Unified Ct. Sys.*, 740 F. Supp. 3d 136, 150 (E.D.N.Y. 2024) (quoting *Rodriguez v. Weprin*, 116 F.3d at 66-67). As to Defendant Paula Wright, Plaintiff complains of a hearing for a temporary order of protection of which he was not informed. Compl. at ¶ 28-i. This is the only allegation against Wright and, because of it is in relation to docketing, scheduling, and court proceedings, it clearly falls within that immunity. *Foy v. New York State Unified Ct. Sys.*, 740 F. Supp. 3d at 150; *Goldberg v. Roth*, 2001 WL 1622201, at *4 (S.D.N.Y. Dec. 17, 2001). [4]

[4]    The Complaint also names Shara Berg as a Defendant. It appears that Berg is the Chief Clerk of Columbia County Family Court. https://ww2.nycourts.gov/courts/3jd/columbia/3JD-Columbia%20Multi%20Courts.shtml. The Court takes judicial notice

of that fact. *Serrano v. DiPerna*, 2024 WL 5247710, at *2 (W.D.N.Y. Dec. 30, 2024). Any claim made regarding Berg's handling of proceedings in state court are likewise covered by this judicial immunity doctrine.

Accordingly, claims against Defendants Wright and Berg must also be dismissed.

### C. State Action

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n*, 396 F.3d 178, 186 (2d Cir. 2005) (internal quotation marks omitted). "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003). "State action requires both the exercise of some right or privilege created by the State and the involvement of a person who may fairly be said to be a state actor." *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (quoting *Flagg v. Yonkers Sav. & Loan Ass'n, FA*, 396 F.3d at 186) (internal quotations and alterations omitted).

 **\*5** The role of counsel appointed to represent Plaintiff and Defendant Anna-Kay Cody in state court litigation does not render them state actors. *See*, *e.g.*, *Alexander v. Murphy*, 2018 WL 3232349, at *5 (N.D.N.Y. July 2, 2018), *report and recommendation adopted*, 2018 WL 6000145 (N.D.N.Y. Nov. 14, 2018) (private attorney not a state actor); *Harrison v. New York*, 95 F. Supp. 3d 293, 328 (E.D.N.Y. 2015) (citing cases). The same is true for counsel appointed to act as law guardians for the children. *Parent v. New York*, 786 F. Supp. 2d 516, 538 (N.D.N.Y. 2011), *aff'd*, 485 F. App'x 500 (2d Cir. 2012) ("although appointed by the state, an attorney for the children or law guardian is not a state actor because he or she must exercise independent professional judgment on behalf of the clients they represent.").

The Complaint also names Samantha Anna-Kay Cody and Derek Cody as Defendants with respect to section 1983 claims. Compl. at pp. 2 & 15. "Private parties are generally not amenable to suit under § 1983, because they are not state actors." *Bhatia v. Yale Sch. of Med.*, 347 F. App'x 663, 664 (2d Cir. 2009). The mere fact that they allegedly availed themselves of the judicial system, Compl. at ¶¶ 11-12, does not make them state actors. *Sam & Mary Hous. Corp. v. New York State*, 632 F. Supp. 1448, 1450 (S.D.N.Y. 1986) ("one does not become a state actor merely by being a litigant in a state court action.").

Accordingly, the Court recommends that the section 1983 claims against Defendants Samantha Cody, Derek Cody, Gamalski, Smith, Zacker, and Gross be dismissed based on a failure to allege state action.

### D. Personal Involvement

Defendant Valerie Caruso is sued in her capacity as Director of Columbia County Support Collections Unit. Compl. at ¶ 16. Though named in the Complaint, there are little, if any, specific factual allegations made against Defendant Caruso.

Liability under section 1983 action is appropriate only if a defendant was personally involved in the alleged constitutional violation. *See Wright v. Smith*, 31 F.3d 496, 501 (2d Cir. 1994); *Collins v. Saratoga Cty. Support Collection Unit*, 2012 2571288, at *3 (N.D.N.Y. July 3, 2012). "[M]ere 'bald assertions and conclusion of law' do not suffice." *Dorsey v. Fisher*, 2010 WL 2008966, at *6 (N.D.N.Y. May 19, 2010) (quoting *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996)). Here, the lack of factual allegations against this Defendant warrant dismissal of claims against Caruso. *Hendrickson v. U.S. Atty. Gen.*, 1994 WL 23069, at *3 (S.D.N.Y. Jan. 24, 1994), *aff'd*, 40 F.3d 1236 (2d Cir. 1994) ("To be sufficient before the law, a complaint must state precisely who did what and how such behavior is actionable under law.").

### E. Conversion Claim

The second cause of action in the Complaint is identified as a conversion claim against Samantha and Derek Cody. Compl. at p. 16. The allegations are brief and allege only that Defendant Samantha Cody "defrauded" multiple governmental agencies through perjury. *Id.*

"According to New York law, 'conversion is the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.' " *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 403-04 (2d Cir.), *certified question accepted*, 7 N.Y.3d 837, 857 N.E.2d 528 (2006), *and certified question answered*, 8 N.Y.3d 283 (2007).

Federal courts are courts of limited jurisdiction. *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019). Jurisdiction exists when the matter at issue arises "under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331. Jurisdiction also exists when diversity of citizenship is present. 28 U.S.C. § 1332. Conversion is a "pure state law claim[ ]." *Greenidge v. Mundo Shipping Corp.*, 41 F. Supp. 2d 354, 358 (E.D.N.Y. 1999). As a result, no federal "arising under" jurisdiction exists for such a claim.

**\*6** "Diversity jurisdiction exists where the parties are citizens of different states and the amount in controversy exceeds $75,000." *Ceglia v. Zuckerberg*, 772 F. Supp. 2d 453, 455 (W.D.N.Y. 2011). "A case falls within the federal district court's original diversity jurisdiction only if diversity of citizenship among the parties is complete, *i.e.*, only if there is no plaintiff and no defendant who are citizens of the same State." *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998) (internal quotations omitted). Complete diversity is required – meaning if any Defendant is a resident of the same state as the Plaintiff, diversity jurisdiction does not exist. *Seemann v. Maxwell*, 178 F.R.D. 23, 24 (N.D.N.Y. 1998). The Complaint specifically alleges that both Plaintiff and the Cody Defendants are residents of New York. Compl. at p. 2. As a result, there is also no diversity jurisdiction in this case and no independent jurisdictional basis for entertaining these claims.

A district court may decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Having recommended dismissal of the federal claims over which the Court has original jurisdiction, the Court also recommends that the District Court decline to exercise its supplemental jurisdiction over any state law claims Plaintiff may be asserting.

### F. Municipal Defendants

The third cause of action in the Complaint names Columbia County and Greene County as Defendants. Compl. at p. 16. Claims against these Defendants should be dismissed.

In *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 691 (1978), the Supreme Court found that "the language of § 1983, read against the background of the ... legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." Courts apply "rigorous standards of culpability and causation" to ensure that the municipality is not held liable solely for the actions of its employees. *Jeffes v. Barnes*, 208 F.3d 49, 61 (2d Cir. 2000) (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405 (1997)). Thus, in order for an individual whose constitutional rights have been violated to have recourse against a municipality under § 1983, he must show that he was harmed by a municipal "policy" or "custom." *Monell v. Dep't of Soc. Servs. of the City of N.Y.*, 436 U.S. at 690-91. A "policy" or "custom" cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the State. *See Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985) (Brennan, J., concurring in part and concurring in the judgment) ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict respondeat superior liability rejected in *Monell*").

Here, however, the Complaint identifies no unconstitutional policy on the part of either municipal Defendant. That omission is fatal, at this juncture, to Plaintiff's Complaint. *Arnold v. Town of Camillus, New York*, 662 F. Supp. 3d 245, 259 (N.D.N.Y. 2023) ("Plaintiff has not identified any formal town policy that has deprived [him] of equal protection."); *Beckwith v. City of Syracuse*, 642 F. Supp. 3d 283, 293 (N.D.N.Y. 2022) (dismissal required when complaint "does not allege the existence of any policy, practice, or custom from which [plaintiff's] alleged constitutional violation resulted.").

**\*7** Claims against the municipal entities, therefore, should be dismissed.

### G. Leave to Amend

"Ordinarily, a court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cnty. Dep't of Soc. Servs. ex rel. Kephart*, 2015 WL 151029, at \*4 (N.D.N.Y. Jan. 7, 2015) (quoting *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991)). "However, where the grounds for

dismissal offer no basis for curing the defects in the pleading, dismissal with prejudice is appropriate." *Norwood v. Albany City Police Dep't*, 2019 WL 7593292, at *2 (N.D.N.Y. Aug. 12, 2019), *report and recommendation adopted*, 2019 WL 5415873 (N.D.N.Y. Oct. 23, 2019). Here, for the reasons set forth above, Plaintiff's allegations that are barred by judicial immunity should be dismissed without leave to amend since no additional pleading could undue that immunity. Since the law is clear that the attorneys assigned to represent parties to state court litigation are not state actors, those claims too should be dismissed without leave to amend. Plaintiff could, perhaps, make factual allegations to establish a claim against the remaining Defendants and so those claims should be dismissed with leave to amend.

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED as set forth above**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[5] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

[5] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

**All Citations**

Slip Copy, 2025 WL 2722411

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

2025 WL 2719776

2025 WL 2719776
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Shawn Taylor GAMMONS, Plaintiff,

v.

Samantha Anna-Kay CODY et al., Defendants.

1:25-CV-941 (AJB/DJS)
|
Signed September 24, 2025

**Attorneys and Law Firms**

SHAWN TAYLOR GAMMONS, Plaintiff, Pro Se, 85 Hunter Avenue, Albany, NY 12206.

**ORDER ON REPORT & RECOMMENDATION**

Anthony J. Brindisi, United States District Judge:

 **\*1**  On July 17, 2025, *pro se* plaintiff Shawn Taylor Gammons ("plaintiff") filed this 42 U.S.C. § 1983 action, purportedly on behalf of himself and his two minor children, against their mother and others involved in an ongoing custody proceeding in Greene County Family Court. Dkt. No. 1. Along with his complaint, plaintiff moved for leave to proceed *in forma pauperis* ("IFP Application"). Dkt. No. 2.

On September 2, 2025, U.S. Magistrate Judge Daniel J. Stewart granted plaintiff's IFP Application, Dkt. No. 2, and, after conducting an initial review of plaintiff's pleading, advised by Report & Recommendation ("R&R") that plaintiff's complaint be dismissed with partial leave to amend. Dkt. No. 5.

First, Judge Stewart explained that plaintiff, as a non-lawyer, could not assert claims on behalf of his minor children in federal court. Dkt. No. 5. Second, Judge Stewart determined that any claims against judicial officers or staff, including defendants Tailleur, Richards, Wright, and Berg, must be dismissed because they were immune from suit under § 1983. *Id*. Third, Judge Stewart concluded that several of the remaining defendants were not state actors and therefore could not be sued under § 1983. *Id*. Fourth, as for defendant Caruso and defendants Columbia and Greene Counties, Judge Stewart found that plaintiff's complaint did not plausibly allege a § 1983 claim against these defendants. *Id*. Fifth,

because plaintiff's federal claims were being dismissed, Judge Stewart recommended that jurisdiction over the state-law claims should be declined. *Id*. Sixth, and finally, Judge Stewart advised that plaintiff should be given *partial* leave to amend his complaint against the non-judicial and non-attorney actors. *Id*. at 16.

Plaintiff has lodged objections. Dkt. No. 6. There, plaintiff indicates that he would like to abandon his claims related to domestic relations law issues, but requests discovery into a long history of "court orders, records, and transcripts" that might establish that one or more of the judicial defendants are not, in fact, immune from suit. *See id*.

Upon *de novo* review, the R&R will be accepted and adopted. *See* 28 U.S.C. § 636(b). The requests identified in plaintiff's objections—including a possible stay for time to "gather all evidence possible"—are not bases on which to modify the R&R. As plaintiff acknowledges, it is usually inappropriate to seek relief in federal court on "domestic relations" matters. Indeed, the so-called "domestic relations exception" will often apply to deprive federal courts of the ability to hear matters that bear on those topics. *See, e.g.*, *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992). Even so, and as Judge Stewart found, it is possible that plaintiff could plausibly allege a claim against one or more of the non-judicial, non-attorney defendants. Accordingly, plaintiff's complaint will be dismissed with partial leave to amend.

Therefore, it is

ORDERED that

1. The Report & Recommendation (Dkt. No. 5) is ACCEPTED;

2. Plaintiff's complaint (Dkt. No. 1) is DISMISSED with partial leave to amend;

 **\*2**  3. Plaintiff's § 1983 claims against defendants Tailleur, Richards, Wright, Berg, Gamalski, Smith, Zacker, and Gross are DISMISSED without leave to amend;

4. Plaintiff's remaining claims are DISMISSED without prejudice;

5. Plaintiff shall have THIRTY DAYS from the date of this decision in which to file an amended complaint that conforms with the guidance in Judge Stewart's R&R and this Order;

2025 WL 2719776

6. If plaintiff timely files an amended complaint, the matter shall be returned to Judge Stewart for further action as appropriate; and

7. If plaintiff does not timely file an amended complaint, the Clerk of the Court is directed to enter a judgment dismissing this action and close the file without further Order of the Court.

The Clerk of the Court is directed to terminate the pending motion and set deadlines accordingly.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2025 WL 2719776

---

**End of Document**     © 2026 Thomson Reuters. No claim to original U.S. Government Works.

Case 1:26-cv-00402-ECC-CBF  Document 7  Filed 04/30/26  Page 46 of 52

Johnson v. City of New York, Not Reported in Fed. Rptr. (2023)

2023 WL 3607219

2023 WL 3607219
Only the Westlaw citation is currently available.
United States Court of Appeals, Second Circuit.

Vandyke JOHNSON, Plaintiff-Appellant,
v.
CITY OF NEW YORK, N.Y.P.D. Officer Randazzo, Badge No. 959119, N.Y.P.D. Officer Hotoniel Diaz, John Doe #1, John Doe #2, Racheal Garcia, Wandaly Torres, Diana Alama, CPS Worker, David A. Hansell, Commissioner Administration for Children's Services, Jane Doe, CPS Worker, Bronx Care Health System, Sheena Blaise, CPS Worker, Defendants-Appellees.

22-2096
|
May 24, 2023

Appeal from a judgment of the United States District Court for the Southern District of New York (George B. Daniels, *Judge*; Barbara Moses, *Magistrate Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

**Attorneys and Law Firms**

FOR PLAINTIFF-APPELLANT: Vandyke Johnson, pro se, New York, NY.

FOR CITY DEFENDANTS-APPELLEES: Lorenzo Di Silvio (Tahirih M. Sadrieh, on the brief), for Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, New York, NY.

FOR DEFENDANT-APPELLEE BRONX CARE: Judy C. Selmeci (Wilson Elser Moskowitz, on the brief), Edelman & Dicker LLP, New York, NY.

PRESENT: GUIDO CALABRESI, EUNICE C. LEE, ALISON J. NATHAN, Circuit Judges.

SUMMARY ORDER

**\*1** Appellant Vandyke Johnson, proceeding *pro se*, challenges the district court's dismissal of, *inter alia*, malicious prosecution and false arrest claims brought pursuant to 42 U.S.C. § 1983. Johnson also appeals

the dismissal of his § 1983 claims against Bronx Care Health System ("Bronx Care"), which he brought on the contention that doctors examined his children over his objections and thereby violated both his and his children's constitutional rights. We assume the parties' familiarity with the proceedings, which we discuss only as necessary to resolve this appeal.

In August 2019, Johnson was arrested after his stepdaughter filed a police report alleging physical violence by Johnson. Johnson was arraigned on charges including third-degree assault and endangering the welfare of a child, and a criminal court order of protection was issued prohibiting Johnson from contacting his stepdaughter. Shortly afterwards, based on these accusations, a neglect petition was filed in Family Court, and a separate Family Court order of protection issued against Johnson. The Family Court order of protection was reissued on November 14, 2019, and was valid through February 24, 2020. Johnson contends that the criminal court order of protection expired when his criminal case was dismissed on November 25, 2019, after which he was informed by his attorneys that there was no longer an active order of protection against him; the attorneys were incorrect, however, as the Family Court order remained in effect.

Johnson was arrested twice for violating the Family Court order of protection. The first arrest occurred on November 25, 2019, only a few hours after his criminal case was dismissed, when he was arrested at home for violating the order of protection. Johnson claimed that the police were shown, and relied on, the Family Court order of protection, which Johnson has variously claimed he was not aware of or that it expired November 14, 2019. Johnson was arrested the second time for violating the Family Court order of protection on February 12, 2020, after attempting to pick up his youngest child at school. Eventually, all the charges stemming from the various arrests were dismissed, and the neglect petition filed in Family Court was withdrawn.

As to the claims against Bronx Care, Johnson contends that, following the arrest of his wife for child neglect on February 7, 2020, his children were taken to Bronx Care and, without Johnson's permission and over his objections, were examined by hospital staff in what Johnson describes as an invasive manner.

Johnson sued the City of New York, the Commissioner of the New York City Administration for Children's Services ("ACS"), ACS employees, and individual police officers (the

Case 1:26-cv-00402-ECC-CBF   Document 7   Filed 04/30/26   Page 47 of 52

Johnson v. City of New York, Not Reported in Fed. Rptr. (2023)
2023 WL 3607219

"City defendants") for, as relevant here, false arrest and malicious prosecution under 42 U.S.C. § 1983. Johnson also sued Bronx Care for violating his and his minor children's Fourth Amendment and due process rights. After permitting three amendments to Johnson's original complaint, the district court granted the defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). [1] Johnson appealed.

[1]     Johnson's state law claims were dismissed without prejudice.

 **\*2**  As an initial matter, and despite Bronx Care's argument to the contrary, this Court has jurisdiction to hear all parts of this case. Bronx Care contends that Johnson's notice of appeal was defective in part because it failed to identify the earlier, nonfinal order dismissing Johnson's claims against Bronx Care. However, Johnson's notice of appeal did identify the district court's final order (doc. 97), which Johnson correctly described as the decision dismissing the remaining defendants and the case. So long as it identifies a final order or judgment, a notice of appeal is limited to certain specified orders *only* if the appellant "expressly stat[es]" that he intends for it to be so limited. Fed. R. App. P. 3(c)(5)(A), (6). Because Johnson's notice contained no express language limiting its reach, we have appellate jurisdiction over nonfinal orders, like the one pertaining to Bronx Care, that merged into and became appealable upon entry of final judgment. *See Gold v. N.Y. Life Ins. Co.*, 730 F.3d 137, 144 (2d Cir. 2013).

This Court "review[s] the grant of a motion to dismiss *de novo*, accepting as true all factual claims in the complaint and drawing all reasonable inferences in the plaintiff's favor." *Fink v. Time Warner Cable*, 714 F.3d 739, 740–41 (2d Cir. 2013). A complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

On appeal, Johnson raises three arguments: (1) under *Tenenbaum v. Williams*, 193 F.3d 581 (2d Cir. 1999), he had standing to bring claims against Bronx Care on behalf of his children; (2) there was no probable cause to arrest and prosecute him and thus that he stated both malicious prosecution and false arrest claims; and (3) that the cases against him terminated in his favor. We address each in turn.

Beginning with the claims against Bronx Care, Johnson is correct that he retains a "constitutionally protected liberty interest in the care, custody and management of [his] children." *Tenenbaum*, 193 F.3d at 593. But, as the district court determined, it is a "well-established general rule in this Circuit that a parent not admitted to the bar cannot bring an action *pro se* in federal court on behalf of his or her child," with certain exceptions not relevant here. *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005). Because Johnson is not an attorney, he could not assert violations of his children's constitutional rights against Bronx Care. The district court properly dismissed these claims without prejudice. *See Berrios v. N.Y.C. House. Auth.*, 564 F.3d 130, 134 (2d Cir. 2009) (reasoning that court may not "make a merits determination of claims filed on behalf of a minor or incompetent person who is not properly represented").

Johnson's claims that Bronx Care violated his own constitutional due process rights are not sufficiently pleaded. Johnson merely asserted that Bronx Care created an unconstitutional policy of interviewing and examining children without parental consent. But Johnson did not plead any facts in support of this claim, and legal conclusions alone do not suffice to state a valid constitutional claim. *See Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82 (2d Cir. 2022).

Next, against the City defendants, Johnson alleged false arrest and malicious prosecution, for both the criminal proceedings against him as well as the neglect petition filed against him in Family Court. We assume, without deciding, that a malicious prosecution claim can be premised on a neglect petition.

"Probable cause is a complete defense to a constitutional claim for false arrest," and "continuing probable cause is a complete defense" to a tort claim for malicious prosecution. *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). "Probable cause exists when one has knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Id.* (internal quotation marks omitted). "The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases" and requires "such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013) (internal quotation marks omitted). "[P]robable cause must be shown as to each crime charged in the underlying criminal action." *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021).

Johnson v. City of New York, Not Reported in Fed. Rptr. (2023)

2023 WL 3607219

**\*3** Johnson argues that his November 2019 and February 2020 arrests were unsupported by probable cause, but we do not agree. [2] Johnson claimed that the November 2019 arrest was unsupported by probable cause because the police relied on either an order of protection he had never received or on an expired version of the Family Court order. There is no dispute, however, that the Family Court order was actually in effect and an arrest premised on it would be valid even if the officers were shown an older, expired copy of the order at some point prior to the arrest. *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("Probable cause requires an officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.... [P]robable cause does not require absolute certainty." (internal quotation marks and citations omitted)). Moreover, the ACS employee's report to the police of Johnson's violation of the order of protection could support a valid determination of probable cause so long as there was no reason to doubt her veracity. *See id.* Regarding the February 2020 arrest, he claimed that school officials falsely reported to police that he was in violation of the Family Court order of protection. Again, however, Johnson did not dispute that the Family Court order was still in effect, and the reports of the school officials, even if later determined to be false, could support a valid determination of probable cause so long as there was no reason to doubt the officials' veracity. *See id.*

[2] To the extent Johnson now argues that the officers lacked probable cause for the initial August 2019 arrest, the allegations as pleaded fail to make out a lack of probable cause. According to Johnson's own complaint, his stepdaughter filed a police report alleging Johnson physically harmed her. This was sufficient to support the arrest. *See Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001).

Claims for malicious prosecution require a plaintiff to allege, on top of lack of probable cause, "that the proceeding was instituted with malice." *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016) (internal quotation marks omitted). Johnson has not pleaded that any of the defendants acted with malice when instituting the criminal or neglect proceedings. Thus, the district court correctly dismissed Johnson's § 1983 malicious prosecution claims. Because Johnson failed to plead two necessary elements for the malicious prosecution claim—actual malice and lack of probable cause—we need not reach his arguments regarding favorable termination.

We have considered Johnson's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

**All Citations**

Not Reported in Fed. Rptr., 2023 WL 3607219

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.

Rogers v. CPS, Not Reported in Fed. Supp. (2020)

Case 1:26-cv-00402-ECC-CBF    Document 7    Filed 04/30/26    Page 49 of 52

2020 WL 2059824

2020 WL 2059824
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Megan ROGERS, Plaintiff,
v.
CPS, et al., Defendants.

5:20-CV-0075 (LEK/ATB)
|
Signed 04/29/2020

**Attorneys and Law Firms**

Megan Rogers, Syracuse, NY, pro se.

**DECISION AND ORDER**

Lawrence E. Kahn, U.S. District Judge

## I. INTRODUCTION

**\*1** Pro se plaintiff Megan Rogers has brought this civil rights action in forma pauperis ("IFP") against "CPS" [1] of Onandaga County (the "County"), Andrea Levandowski, who is an employee of CPS, and "Social Worker, Dep't of State." Dkt. Nos. 1 ("Complaint") at 1; 2 ("IFP Application"). On February 6, 2020, the Honorable Andrew T. Baxter, United States Magistrate Judge, reviewed the Complaint under 28 U.S.C. § 1915(e)(2)(B) and issued a report-recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3. Dkt No. 5 ("Report-Recommendation"). Finding that amendment would be futile since Plaintiff's Complaint is a "frivolous" "jumble of thoughts that fail to make any sense," he recommended that the Court dismiss the Complaint with prejudice. R. & R. at 11.

[1]     The Court construes "CPS" to refer to "Child Protective Services," a county agency.

On February 18, 2020, Plaintiff filed objections to the Report-Recommendation. Dkt. No. 6 ("Objections").

For the reasons that follow, the Court adopts the Report-Recommendation in part and modifies it in part.

## II. STANDARDS OF REVIEW

### A. Report-Recommendation

Within fourteen days after a party has been served with a copy of a magistrate judge's report-recommendation, the party "may serve and file specific, written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b); L.R. 72.1(c). If objections are timely filed, a court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). However, if no objections are made, or if an objection is general, conclusory, perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court need review that aspect of a report-recommendation only for clear error. Barnes v. Prack, No. 11-CV-857, 2013 WL 1121353, at \*1 (N.D.N.Y. Mar. 18, 2013); Farid v. Bouey, 554 F. Supp. 2d 301, 306–07 (N.D.N.Y. 2008), abrogated on other grounds by Widomski v. State Univ. of N.Y. at Orange, 748 F.3d 471 (2d Cir. 2014). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b).

### B. Section 1915(e)(2)(B)

When a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that — ... the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the financial criteria to commence an action IFP, it is the court's responsibility to determine whether the plaintiff may properly maintain a complaint. See id.

[2]     An action is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

A court may not dismiss a complaint if the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly,

550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Twombly, 550 U.S. at 555). Hence, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. Id. (internal quotation marks and alterations omitted).

**\*2** The Court must construe pro se complaints liberally, see Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (emphasis in original) (internal citations omitted).

### III. DISCUSSION

Plaintiff's Objections make no direct argument about Judge Baxter's findings and instead provides an assortment of random statements. Objs. at 1–3. For instance, Plaintiff asserts that "Queen Elizabeth wants to cut her head off," a "bottle of baby powder was thrown in [Plaintiff's] yard," and some unidentified individuals found "a barn w[ith] bones" after conducting a search warrant. Id. Thus, the Court reviews the Report-Recommendation for clear error. See Rogers v. Clinton, No. 19-CV-175, 2019 WL 3454099, at \*1 (N.D.N.Y. July 31, 2019) (Kahn, J.) (observing that clear error review is warranted when the objections do not directly address the magistrate judge's findings), appeal dismissed by No. 19-2632, 2019 WL 6218814 (2d Cir. Oct. 30, 2019). While it finds none, the Court will modify Judge Baxter's recommendation that the Court dismiss Plaintiff's Complaint with prejudice.

Giving Plaintiff's Complaint an extremely liberal interpretation, which the Court may do since Plaintiff is litigating this action pro se, see Guan v. New York State Dep't of Envtl. Conservation, No. 16-CV-2180, 2019 WL 1284260, at \*4 (E.D.N.Y. Mar. 20, 2019), Plaintiff claims that CPS and Levandowski violated her constitutional rights under 42 U.S.C. § 1983.[3][4]

3    As the Magistrate Judge observed, "There is no such person as 'Social Worker, Dep't of State,' and thus, the [C]ourt will focus on CPS and Andrea Levandowski as defendants." See R. &. R. at 8.

4    "42 U.S.C. § 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). Section 1983 does not create any substantive rights; it provides civil litigants a procedure to redress the deprivation of rights established elsewhere. Id. (citing City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985)). "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under the color of state law deprived h[er] of a federal right." Id.

Even though, as Judge Baxter found, Plaintiff's Complaint does not include allegations, let alone plausible ones, which suggest CPS or Levandowski deprived Plaintiff of any constitutional rights, R. & R. at 8–11, the Court observes that Plaintiff included allegations in her objections suggesting that CPS and Levandowski caused Plaintiff to lose custody of her children in violation of Plaintiff's due-process rights. First, Plaintiff alleges that CPS and Levandowski took her children from her because they found Plaintiff "conceited, arrogant, [and] argumentative." Objs. at 2. She also avers they took her children despite the fact that Plaintiff "work[ed] [her] ... ass off," attended "[four] programs a week in order to document [she] was a responsible parent," "passed drug testing," and passed a mental health evaluation. Id. at 1.

**\*3** "Although the Court need not consider new allegations raised in [Plaintiff's] objections to [the Report-Recommendation]," see Sanders v. Long Island Newsday, No. 09-CV-2393, 2010 WL 3419659, at \*3 n.2 (E.D.N.Y. Aug. 27, 2010) (citations omitted), the Court will analyze whether Plaintiff has plausibly pled due-process claims against CPS and Levandowski.

As an initial matter, Plaintiff cannot sue CPS because it is an administrative arm of Onandaga County. See Davis v. Lynbrook Police Dep't, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) ("[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and therefore, cannot sue or be sued."); Lukes v. Nassau Cnty. Jail, No. 12-CV-1139, 2012 WL 1965663, at \*2 (E.D.N.Y.

Rogers v. CPS, Not Reported in Fed. Supp. (2020)

2020 WL 2059824

May 29, 2012) (dismissing claims against Nassau County Jail because it "is an administrative arm of Nassau County, without a legal identity separate and apart from the County").

Nevertheless, in deference to Plaintiff's pro se status, the Court considers whether Plaintiff has stated constitutional claims against the County, who is the real party in interest. See Solis v. Cnty. of Westchester, No. 94-CV-5102, 1995 WL 14072, at *1 (S.D.N.Y. Jan. 10, 1995) (noting that a county agency is not a suable entity and that the county is the real party in interest); N.Y. County Law § 51 ("Actions or proceedings by or against a county shall be in the name of the county.").

It is well-established that a municipality [5] may not be held liable under § 1983 on the basis of respondeat superior. Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 690–91 (1978). Rather, municipalities are responsible only for "their own illegal acts." Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986). In order to sustain a § 1983 claim for municipal liability, a plaintiff must show that he suffered a constitutional violation and that the violation resulted from an identified municipal policy or custom. Monell, 436 U.S. at 694–95. A municipal policy or custom may be established where the facts show: (1) a formal policy, officially promulgated by the municipality, id. at 690; (2) an action taken by an official who is responsible for establishing municipal policies with respect to the subject matter in question, Pembaur, 475 U.S. at 483–84; (3) an unlawful practice by subordinate officials so permanent and widespread as to practically have the force of law, City of St. Louis v. Praprotnik, 485 U.S. 112, 127–30 (1985); or (4) a failure to train, supervise, or discipline that amounts to "deliberate indifference" to the rights of those with whom the municipality's employees interact, City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989).

[5] The principles of municipal liability also apply to counties. Holmes v. Cty. of Montgomery, No. 19-CV-617, 2020 WL 1188026, at *6 n.5 (N.D.N.Y. Mar. 12, 2020) (Kahn, J.) (citing Hill v. Cty. of Montgomery, No. 14-CV-933, 2019 WL 5842822, at *17 (N.D.N.Y. Nov. 7, 2019)).

As to Plaintiff's potential claim against Levandowski, it is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)). "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.' " Austin v. Pappas, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). "[V]icarious liability is inapplicable to ...§ 1983 suits." Iqbal, 556 U.S. at 676.

**\*4** Taken together, Plaintiff's allegations in the Complaint and her Objections are insufficient to suggest that the County had some policy or custom that violated Plaintiff's due-process rights. Nor are they sufficient to suggest that Levandowski was personally involved in any deprivation of Plaintiff's due-process rights. Consequently, the Court concludes Plaintiff has not plausibly pled these defendants violated her rights. Nevertheless, because Plaintiff's objections contain new allegations not found in the original Complaint, the Court will provide Plaintiff with an opportunity to file an amended complaint. See Sanders, 2010 WL 3419659, at *3 n.2 (allowing a pro se plaintiff to replead claims that the magistrate judge concluded should be dismissed with prejudice because the plaintiff made new allegations supporting those claims in his objections to the magistrate judge's a report-recommendation).

If Plaintiff wishes to amend her Complaint, she must file an amended complaint that complies with Federal Rule of Civil Procedure Rule 15. Any amended complaint, which shall supersede and replace the original Complaint in its entirety, must allege claims of misconduct or wrongdoing against each named defendant that Plaintiff has a legal right to pursue and over which this Court may properly exercise jurisdiction. Any amended complaint must also be signed by Plaintiff and comply with the pleading requirements of Rules 8 and 10 of the Federal Rules of Civil Procedure.

**IV. CONCLUSION**
Accordingly, it is hereby:

**ORDERED**, that the Report-Recommendation (Dkt. No. 5) is **MODIFIED** to the extent that it recommends dismissal of Plaintiff's claims with prejudice. The Report-Recommendation is otherwise **APPROVED and ADOPTED**; and it is further

**ORDERED**, that Plaintiff's § 1983 claim against CPS is **DISMISSED with prejudice** as CPS is an entity not subject to suit; and it is further

Case 1:26-cv-00402-ECC-CBF    Document 7    Filed 04/30/26    Page 52 of 52

**Rogers v. CPS, Not Reported in Fed. Supp. (2020)**
2020 WL 2059824

**ORDERED**, that Plaintiff's § 1983 claims against the County, Levandowski, and "Social Worker, Dep't of State" are **DISMISSED without prejudice** pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted; and it is further

**ORDERED**, that CPS, the County, Levandowski, and "Social Worker, Dep't of State" are **TERMINATED** as defendants in this action; and it is further

**ORDERED**, that if Plaintiff wishes to proceed with this action, she must file an amended complaint as directed above within **sixty days** of filing date of this Decision and Order; and it is further

**ORDERED**, that if Plaintiff timely files an amended complaint, this matter be returned to the Court for further review; and it is further

**ORDERED**, that if Plaintiff fails to timely file an amended complaint as directed above, the Clerk shall enter judgment without further order of this Court indicating that this action is **DISMISSED without prejudice pursuant** to 28 U.S.C. §§ 1915(e)(2)(B) for failure to state a claim upon which relief may be granted. In that event, the Clerk is directed to close this case; and it is further

**ORDERED**, that all pleadings, motions, and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. **Any paper sent by Plaintiff to the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel. Any document received by the Clerk that does not include a proper certificate of service will be stricken from the docket.** Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court. **Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; her failure to do so may result in the dismissal of this action**; and it is further

**\*5 ORDERED**, that the Clerk serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Not Reported in Fed. Supp., 2020 WL 2059824

---

**End of Document**

© 2026 Thomson Reuters. No claim to original U.S. Government Works.